[Civ. No. 1992. Fourth Appellate District.—July 2, 1937.]

THOMAS EDWIN GILL et al., Respondents, v. CHARLES G. JOHNSON, as State Treasurer, etc., Appellant.

U. S. Webb, Attorney-General, and L. G. Campbell and James S. Howie, Deputies Attorney-General, for Appellant.

Barker & Keithly for Respondents.

BARNARD, P. J.—This is an action to recover compensation or damages under the assurance fund provisions of the Torrens Land Title Act (1915 Stats., p. 1932, Act 8589, Deering's Gen. Laws).

One Austin brought a proceeding in the Superior Court of Imperial County on October 2, 1917, to have a certain parcel of land registered under the Torrens Act, setting forth in his petition that a trust deed for $55,000 then held by a Nevada corporation had been fraudulently obtained and praying that the trust deed be canceled and the land registered under the act. The default of that corporation was entered on December 5, 1917, and a judgment entered on December 7, 1917, canceling that trust deed and ordering the registration of the land. A registrar's certificate of title was issued to Austin on December 13, 1917, and Austin immediately transferred the land to one Thomason, a new registrar's certificate of title being issued to him on December 14, 1917. The trust deed was never registered and never appeared in any registrar's certificate of title.

On February 8, 1918, the plaintiffs in this action purchased the land from Thomason, receiving, on February 13, 1918, another registrar's certificate of title showing them to be the owners thereof. On February 15, 1918, an action was begun in the United States District Court to establish the validity of the $55,000 trust deed and to have the land sold

for default in payments thereunder. In connection with that action it developed that the judgment in the original registration proceeding in Imperial County had been obtained by means of a fraudulent affidavit of personal service upon the corporation holding the trust deed and that, in fact, notice had never been served upon the holder of the trust deed. A judgment in favor of the holder of the trust deed eventually became final (*Gill* v. *Frances Inv. Co.*, 19 Fed. (2d) 880), and the land was sold in 1927 to satisfy that judgment. Until that time the plaintiffs remained in possession, defending their title to the property.

After losing the land the plaintiffs brought this action upon the theory that they had been damaged through the operation of the provisions of the Torrens Land Title Act and by reason of the above-mentioned fraud. The case has been before us on three former appeals. (103 Cal. App. 234 [284 Pac. 510], 125 Cal. App. 296 [13 Pac. (2d) 857, 14 Pac. (2d) 1017], and 8 Cal. App. (2d) 369 [48 Pac. (2d) 139].) On the last of these appeals it was held that the question of whether or not the plaintiffs were guilty of negligence, within the meaning of section 105 of the Torrens Land Title Act, was still to be decided by the trial court. On a retrial, the court found in favor of the plaintiffs and the defendant state treasurer has appealed. For convenience, we will refer to the plaintiff husband as the respondent.

The appellant contends that the evidence requires a reversal of the judgment since it discloses negligence on the part of the respondent in that he failed to make the investigation that should have been made by a reasonably prudent man. It is argued that the trust deed was recorded; that the registrar's certificate, which contained copies of material portions of the Torrens Land Title Act, disclosed the fact that an action might be brought within one year after the initial registration; that the respondent talked to Austin; that he knew Austin was then living upon the property; that he did not immediately receive a certificate for 150 shares of water stock which went with the land; that these facts were sufficient to put him upon notice of any defect in the title; that it was his duty to make a further investigation, which he did not do; and that any reasonable investigation would have disclosed the existence of the $55,000 trust deed.

It may first be observed that there is evidence that before making the purchase the respondent went to the land where he saw Mrs. Austin, that she told him that they were living there temporarily until her husband could finish building a house upon another piece of land which they had bought, that he later saw Mr. Austin and asked him about the nature of the land, and that Austin told him it was good land except that it needed some leveling. There is also evidence that when the deal was closed Thomason told the respondent that he was unable to find the certificate for 150 shares of water stock, but gave him a written agreement under which he agreed to obtain for the respondent this certificate, and to bring suit therefor if necessary. The respondent testified that he never received the stock certificate from Thomason but later obtained title to the 150 shares by allowing the district assessment to go delinquent and purchasing it at a delinquent sale. He also testified that his first knowledge of any dispute as to his title came from a newspaper article in March, 1918, and that some time thereafter he was served with process in the federal suit.

Section 105 of the Torrens Land Title Act authorizes any person who, without fraud or negligence on his part, is deprived of any interest or estate in land through the operation of any provision of the act, or through the fraud of another person, to bring an action to recover for his loss from the assurance fund established by other provisions of the act. No question of fraud on the part of this respondent is involved. The question of his negligence, within the meaning of section 105, depends upon whether or not he did what a reasonable person would have done in relying on the registrar's certificate, and involves, among other things, a consideration of other sections of that act. Section 16 provides that a decree of the court ordering registration shall be in the nature of a decree *in rem,* and shall forever quiet title to the land ordered registered and shall be final and conclusive against the rights of all other persons, known and unknown, except only as provided in the act. Section 34 provides that the registered owner of land brought under the act, except in case of fraud on his part, shall hold the land subject only to the claims noted in the last certificate of title in the registrar's office and free from all others, with six listed exceptions. The only one of these exceptions which could have any bearing here is number 5,

which reads: "Such right of action or claim as is allowed by this act." This doubtless refers to section 45, which permits anyone having a claim adverse to the title or interest certified in the first certificate bringing the land under the operation of the act to bring an action to establish his claim within one year following the first registration. The last clause of that section provides that nothing therein shall effect the rights of any person acquired *bona fide,* without knowledge, for a valuable consideration and subsequent to the registration of the land. It would seem from the provisions of this section and section 34 that the original registered owner, who brought the land within the provisions of the act, is offered no assurance of good title until the expiration of one year. On the other hand, section 36 purports to place a subsequent transferee of registered land in a different position. It provides that, except in case of fraud and "except as herein otherwise provided", no person taking a transfer of registered land from the registered owner shall be held to inquire into the circumstances under which any previous registered owner was registered or be affected with notice, actual or constructive, of any unregistered lien or claim. It is not entirely clear what the clause "except as herein otherwise provided" refers to but it seems to refer to sections 60, 98 and 99, which contain provisions under which claims may subsequently, under order of court, be registered. Taken as a whole, section 36 seems to relieve such a transferee of the duty of making an investigation or going behind the certificate issued, and to provide that even knowledge of an unregistered claim shall not in itself be taken as fraud. Assuming that constructive notice of such a claim might, however, indicate negligence, a question of fact would certainly be presented where, as here, any constructive notice had apparently been wiped out by an order of court. Sections 37, 38 and 39 then provide that certain possible claims shall not affect *bona fide* purchasers for value and sections 40, 41 and 42 make the certificate of title of a registered owner conclusive in certain actions.

In *Follette* v. *Pacific L. & P. Corp.,* 189 Cal. 193 [208 Pac. 295, 23 A. L. R. 965], it was held that under the circumstances there appearing a transferee of registered land could not be a *bona fide* purchaser for value as against the rights of an occupant of the land who was not personally served with notice as required by the act, and that certain sections

of the act are unconstitutional in so far as they purport to entitle the purchaser of a registered title to hold the land superior to the rights and interests of such an occupant. The respondent here actually lost the land he purchased under a somewhat similar holding that he was not a *bona fide* purchaser for value in so far as the rights of the holder of the trust deed were concerned. But whatever the effect of such a registered title as between a transferee and the holder of an unregistered claim, the conclusiveness of the registrar's certificate of title and of the registration are in no way made the test of the right of a transferee to reimbursement from the assurance fund in the event of a loss which results from the successful prosecution of an unregistered claim. The act itself seems to recognize that in spite of all its provisions for the protection of a registered owner in the security of his title he may, through the operation of the act or through fraud or other fault on the part of others, be deprived of all or a part of his interest in the land, and this without fault upon his part. To cover that very situation an assurance fund is created by the act which, after all, is but a form of insurance for which certain fees, in effect premiums, are collected from those who register their land under the act, which fees are paid for the benefit of anyone who comes within the provisions of that part of the act. The conditions under which a party may recover from the assurance fund are separate and distinct from the provisions of the act which effect the validity and conclusiveness of the certificate of title provided for, and the only one of these conditions with which we are here concerned is that the party seeking reimbursement shall not have been negligent.

The purpose and terms of the act itself constitute an invitation to a purchaser of registered land to rely upon the certificates of title therein provided for. Section 36 contains a provision going a long way toward relieving one who takes a transfer of registered land from the registered owner from the necessity of inquiring into the circumstances under which any previous registered owner was registered. This provision, regardless of its effect on the title actually obtained by such a transferee, is quite important in determining whether or not he was negligent in failing to investigate the proceedings under which the land was registered. It hardly seems reasonable to think that the negligence re-

ferred to in section 105 was intended to include the mere reliance upon the certificate which is to a large extent, at least, invited by the act, or the failure to conduct an investigation which the act says need not be made.

Assuming, however, that under some circumstances it might be negligent to rely upon such a registration certificate, it cannot conclusively be said that such circumstances appear here. Nor does it appear, as argued by the appellant, that this respondent would have discovered the true situation and the defect in the registration proceedings if he had made a reasonable investigation. He talked with Austin and his wife and was told that they were leaving the place within a week or two, and that the land was good land. Austin is not claiming any rights through his possession of the land and it may be reasonably inferred that the respondent was justified in assuming that no trouble was to be expected from that source. Neither Austin nor anyone else told him anything that would have suggested any defect in the registration proceedings. It cannot be said, as a matter of law, that he should have asked Austin whether he had committed any fraud in that connection, and it is not reasonably to be expected that Austin would have confessed in replying to such a question. If, of his own volition, he had investigated the proceedings he would have found them regular on their face, showing personal service on the holder of the trust deed and the cancellation of that instrument by order of the court.

The respondent lost the land he had purchased through the fraud of another, which no reasonable investigation would have disclosed to him, and through his reliance upon the Torrens Land Title Act and a certificate of title issued in accordance therewith. In other words, he was deprived of the property through the operation of the provisions of the act and by reason of the fraud of another person. The provisions of the act establishing an assurance fund and permitting a recovery therefrom would seem to have been designed and intended for just such a case as this. In our opinion, the question of respondent's negligence was one of fact and the court's findings on that issue are supported by the evidence.

It is next urged that the court erred in excluding from evidence three letters or notices. One of these was sent to Austin, another was sent to an abstract company in El Centro, and the third was sent by this abstract company to

the holder of the trust deed, and all referred to the fact that the trust deed had been assigned to another corporation. It is argued that these were admissible as showing that a proper investigation would have informed the respondent of this trust deed. What we have already said covers this situation and no reversible error appears.

■ The final contention is that, in any event, the respondent's recovery must be limited to $31,400. The judgment from which this appeal was taken is for $48,000. Judgment by default was previously entered against Austin for $31,400 and it is argued that Austin, having committed the fraud, is the principal debtor, that the state treasurer, as custodian of the assurance fund, is but a surety for the principal debtor, and that as such surety it cannot be held liable in any greater sum than that awarded against its principal. While it is admitted that no contract of suretyship existed here it is argued that this relation arises by operation of law.

The judgment for $31,400 against Austin was apparently based upon the value of the land at the time it was purchased by the respondent in February, 1918, and it appears, without conflict, that he paid that amount for it. The judgment against the state treasurer as custodian of this assurance fund, from which this appeal was taken, is based upon evidence as to the value of this land at the time the respondent was dispossessed, by reason of the sale of the land pursuant to the judgment entered in the action in the federal court. No attack is made upon the sufficiency of this evidence, the only contention being that the amount of the judgment against Austin is controlling.

This question must be determined under the provisions of section 105 of this act, upon which this entire action is based. The first paragraph of subdivision 2 of that section authorizes the commencement of such an action ''to recover not over the fair market value of the interest or estate of which he has been so deprived''. Subdivision 3 of this section, under the heading ''Damages recoverable'', provides: ''Nor shall any plaintiff recover as compensation under the provisions of this act more than the fair market value of the land or of the estate or interest held by him at the time when he suffered the damage, loss or deprivation complained of.''

We think the assurance fund provisions of this act are similar in effect to an insurance contract between a certificate holder and the state as holder of a certain fund. ''Insurance is a contract whereby one undertakes to indemnify another against loss, damage, or liability, arising from an unknown or contingent event.'' (Civ. Code, sec. 2527.) ''Since the guaranty, as we have indicated, runs against future loss that may be incurred if the record title shall prove to be different from that certified, it is a contract of indemnity.'' (*Title Ins. & Trust Co.* v. *Los Angeles*, 61 Cal. App. 232 [214 Pac. 667, 669].) ''However, the contract of a surety is a direct promise to perform the obligation of the principal in event that the principal fails to perform. On the other hand, the contract of an indemnitor is to reimburse his indemnitee for loss suffered, or to save him harmless from liability, but never directly to perform the obligation indemnified.'' (13 Cal. Jur., p. 979.)

While the action in the federal court was pending the respondent did not know whether he would be dispossessed or not. He was deprived of his interest in the land only when judgment in that action became final. Under the terms of the act he was entitled to recover the fair market value of the interest or estate of which he had been deprived, and the act particularly limits the amount of his recovery to the fair market value of the land at the time when he suffered the deprivation complained of. It would seem to follow that he was entitled to recover the value of the land at the time it was taken from him, and the judgment conforms to the evidence in that respect.

For the reasons given the judgment is affirmed.

Marks, J., and Jennings, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 26, 1937.