[No. B038960. Second Dist., Div. Seven. June 13, 1989.]

COMMONWEALTH MORTGAGE ASSURANCE COMPANY, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
RONALD SAMPSON et al., Real Parties in Interest.

510

**COUNSEL**

MacCarley, Phelps & Rosen, Mark MacCarley, Ervin, Cohn & Jessup and Allan B. Cooper for Petitioner.

No appearance for Respondent.

Feinberg, Gottlieb & Grossman and Marshall W. Waller for Real Parties in Interest.

**OPINION**

LILLIE, P. J.—By way of petition for writ of mandate, petitioner Commonwealth Mortgage Assurance Company (CMAC) challenges rulings of the superior court granting the motion of real parties Ronald and Elizabeth Sampson (Sampsons) for summary adjudication of issues, and barring CMAC's cause of action against Sampsons for breach of contract, and from recovering punitive damages on its first cause of action for fraud.

The primary issue herein, and one which appears to be of first impression, is whether the indemnity agreements which form the basis of CMAC's third cause of action for breach of contract are unenforceable because they attempt to wrongfully circumvent antideficiency legislation. (Code Civ. Proc., § 580d.)

## Factual and Procedural Background

According to Sampsons' separate statement of undisputed material facts, and CMAC's response thereto, the following facts are without dispute: On or about December 21, 1982, Sampsons purchased three condominium units. Sampsons obtained purchase money loans totaling about $612,000 from Commonwealth Bank, not a party herein. For security on the three loans to Sampsons, Commonwealth Bank demanded policies of mortgage guaranty insurance, which were issued by CMAC and which insured Sampsons' performance on the promissory notes evidencing the purchase money loans on the properties.[1] On or about December 7, 1982, and concurrent with the providing of the mortgage guaranty insurance, CMAC obtained the signatures of Sampsons on agreements of indemnity, pursuant to which Sampsons agreed to protect CMAC from all loss which CMAC may be required to incur arising from its obligations under the mortgage guaranty insurance policies. Several months later Sampsons defaulted on the loans, and Commonwealth Bank, through its assignee, Western Empire Savings Loan Association, declared a default and sold the properties at a nonjudicial trustee's sale; Western Empire purchased the properties for the total amount of the unpaid mortgage debt plus costs.[2] Western Empire then submitted a claim to CMAC under the policies of mortgage guaranty insurance, and CMAC paid approximately $175,000 to Western Empire pursuant to the policies.[3]

---

[1] In their opposition to the petition for writ of mandate, Sampsons claim that they were required to pay about $10,000 in premiums for the mortgage guaranty insurance policies issued to Commonwealth Bank.

[2] Although the details of the foreclosure and trustee's sale were not presented in the parties' statements of undisputed or disputed facts, CMAC admitted in its points and authorities in opposition to Sampsons' motion for summary judgment or summary adjudication of issues that the property was sold at a nonjudicial sale.

[3] CMAC claims that with the assistance of the seller, Sampsons had inflated the purchase price of the properties, borrowed the down payments and received all their down payment back at the close of escrow, plus additional cash. This money was allegedly represented in the escrow instructions as a payoff of a second mortgage which CMAC claims never existed. It is unclear whether, despite this alleged fictitious second mortgage, the property was in fact overvalued. Significantly, the trustee's deeds upon sale indicate that Western Empire bid the full amount of Sampsons' indebtedness at the sale and if there were no senior liens which had to be paid off, the debt was satisfied by the trustee's sale, which finally fixes the value of the property therein sold. (*Sumitomo Bank* v. *Taurus Developers, Inc.* (1986) 185 Cal.App.3d 211, 219 [229 Cal.Rptr. 719].)

CMAC alleges in its opposition to the summary judgment motion that Western Empire made claims to it under the mortgage guaranty insurance policies for the full amount of the principal indebtedness plus interest and attorneys' fees. Apparently, Western Empire based its claims on the total amount of indebtedness *prior* to the foreclosure, thereby ignoring the fact that its debt had been satisfied. In effect, Western Empire assigned the property no value as security. CMAC, pursuant to the policies, paid Western Empire 25 percent of each claim, for a total of about $175,000. Although the insurance policies are not part of our record,

CMAC then demanded that Sampsons perform under the indemnity agreements. Sampsons refused. CMAC subsequently filed first amended complaint against Sampsons for fraud, negligent misrepresentation, and breach of contract. The gravamen of the first two causes of action was allegedly false statements made by Sampsons in their loan applications pertaining to their gross monthly income, that no portion of the down payment for the properties was borrowed and that they had never had property sold through foreclosure. CMAC alleged that the false representations were made by Sampsons to induce CMAC to provide mortgage guaranty insurance for the loans taken out by Sampsons.

Sampsons moved for summary judgment or alternatively for summary adjudication that the following two issues were without dispute: (1) the indemnity agreements which form the basis for the third cause of action for breach of contract are void and unenforceable by operation of the antideficiency legislation of Code of Civil Procedure section 580d, and (2) CMAC is not entitled to recover punitive damages pursuant to its fraud cause of action because Civil Code section 2848 limits recovery of a surety to that necessary to reimburse what has been expended. After hearing, the court denied summary judgment, but granted summary adjudication of the foregoing two issues. CMAC filed timely petition for writ of mandate (Code Civ. Proc., § 437c, subd. (*l*)) seeking to reverse the trial court's rulings on the motion for summary adjudication of issues. On March 22, 1989, we issued order to show cause to the superior court to show cause why it should not be compelled to vacate that part of its order adjudicating that the indemnity agreements are void and unenforceable. Oral argument has been had thereon.

I

CAUSE OF ACTION FOR BREACH OF INDEMNITY CONTRACTS

█ In reviewing an order declaring an issue to be without substantial controversy pursuant to Code of Civil Procedure section 437c, we are bound by the rules generally applicable to review of summary judgments. (*Tauber-Arons Auctioneers Co.* v. *Superior Court* (1980) 101 Cal.App.3d

---

CMAC apparently paid 25 percent of the claim submitted to it pursuant to Insurance Code section 12640.09, which provides in part that "(a) A mortgage guaranty insurer shall limit its coverage for the class of insurance defined in paragraphs (1) and (3) of subdivision (a) of Section 12640.02 to a maximum of a net of 25 percent at risk of the entire indebtedness to the insured, or in lieu thereof, a mortgage guaranty insurer may elect to pay the entire indebtedness to the insured and acquire title to the authorized real estate security." This statute appears to limit the amount of available coverage, not determine the amount of damage or loss.

268, 273 [161 Cal.Rptr. 789].) Summary judgment is properly granted only if no triable issue exists or where the record establishes as a matter of law a cause of action asserted against a party cannot prevail. (*Rare Coin Galleries, Inc.* v. *A-Mark Coin Co., Inc.* (1988) 202 Cal.App.3d 330, 334 [248 Cal.Rptr. 341].)

■■■ Sampsons claimed below and contend here that the cause of action for breach of contract must fail because the indemnity agreements are nothing more than an "antideficiency circumvention scam," and are tantamount to an attempt to collect a deficiency judgment which is barred by Code of Civil Procedure section 580d (hereafter section 580d). CMAC, on the other hand, argues that it seeks recovery of its contractual losses, not a "deficiency," and its suit involves an obligation separate and distinct from that of the underlying notes secured by the deeds of trust, and is thus not barred by antideficiency legislation.

"In California, as in most states, a creditor's right to enforce a debt secured by a mortgage or deed of trust on real property is restricted by statute. Under California law 'the creditor must rely upon his security before enforcing the debt. (Code Civ. Proc., §§ 580a, 725a, 726.) If the security is insufficient, his right to a judgment against the debtor for the deficiency may be limited or barred by sections 580a, 580b, 580d, or 726 of the Code of Civil Procedure.' [Citation.]" (*Guild Mortgage Co.* v. *Heller* (1987) 193 Cal.App.3d 1505, 1510 [239 Cal.Rptr. 59], fns. omitted.)

Section 580d provides in part: "No judgment shall be rendered for any deficiency upon a note secured by a deed of trust or mortgage upon real property hereafter executed in any case in which the real property has been sold by the mortgagee or trustee under power of sale contained in such mortgage or deed of trust." ■■■ The purpose of this section is to discourage the overvaluing of the security; the risk of inadequate security because of overvaluation is placed on the lender. (*Union Bank* v. *Wendland* (1976) 54 Cal.App.3d 393, 406-407 [126 Cal.Rptr. 549].) The antideficiency statutes further serve to prevent creditors in private sales from buying in at deflated prices and realizing double recoveries by holding debtors for large deficiencies. (*Guild Mortgage Co.* v. *Heller, supra,* 193 Cal.App.3d 1505, 1511.) "The Supreme Court also has observed that 'section 580d was enacted to put judicial enforcement on a parity with private enforcement. This result could be accomplished by giving the debtor a right to redeem after a sale under the power. The right to redeem, like proscription of a deficiency judgment, has the effect of making the security satisfy a realistic share of the debt. [Citation.] By choosing instead to bar a deficiency judgment after private sale, the Legislature achieved its purpose without denying the

creditor his election of remedies. If the creditor wishes a deficiency judgment, his sale is subject to statutory redemption rights. If he wishes a sale resulting in nonredeemable title, he must forego the right to a deficiency judgment. In either case the debtor is protected.' [Citation.]" (*Ibid.*)

■ Although section 580d applies by its specific terms only to actions for "any deficiency upon a note secured by a deed of trust" and not to actions based upon other obligations, the proscriptions of section 580d cannot be avoided through artifice (*Passanisi* v. *Merit-McBride Realtors, Inc.* (1987) 190 Cal.App.3d 1496, 1508 [236 Cal.Rptr. 59]), and the debtor cannot be compelled to waive its provisions in advance (*Freedland* v. *Greco* (1955) 45 Cal.2d 462, 467-468 [289 P.2d 463]), because the antideficiency legislation was established for a public reason and cannot be contravened by a private agreement. (See *Valinda Builders, Inc.* v. *Bissner* (1964) 230 Cal.App.2d 106, 112 [40 Cal.Rptr. 735].) In determining whether a particular recovery is precluded, we must consider whether the policy behind section 580d would be violated by such a recovery. (*Passanisi* v. *Merit-McBride Realtors, Inc., supra,* 190 Cal.App.3d at p. 1508.)

■ It is unnecessary to decide the issue of whether deficiencies in fact remained after the foreclosure sales herein (*ante,* fn.3). Rather, in addressing the issue of whether the indemnity contracts herein are unenforceable we look to their purpose and effect in order to determine whether they are attempts to recover deficiencies in violation of section 580d.

Although the parties have not brought to our attention a California case dealing with a mortgage guaranty insurer who, having paid the claim of the lender after a nonjudicial foreclosure, seeks to obtain reimbursement for such payment from the debtor, we find the facts herein substantially similar in effect to those in *Union Bank* v. *Gradsky* (1968) 265 Cal.App.2d 40 [71 Cal.Rptr. 64], and conclude that the indemnity agreements herein are nothing more than attempts to recover a deficiency in violation of the antideficiency statute.

In *Gradsky,* Bess Gradsky executed a note in favor of Union Bank and a first deed of trust securing the note. Max Gradsky executed a written guaranty of Bess's obligations. The issue was whether Union Bank (Bank) could recover from Max, the guarantor, the unpaid balance upon the note following the bank's nonjudicial sale of the security. The court discussed the impact of section 580d on the various options of the Bank: "(1) It could have brought an action for judicial foreclosure, joining Max and Bess; (2) it could have sued Max upon his guarantee for the full amount of the unpaid

balance of the principal obligation without proceeding against either Bess or the security; or (3) it could have realized upon the security by way of nonjudicial sale." (265 Cal.App.2d 40, 43, fn. omitted.)

The court explained that had the Bank elected the first option, no section 580d problem would have existed because Bess would have had a statutory right of redemption and the Bank could have obtained a deficiency judgment. Had the Bank elected the second course, section 580d would not have operated to shield Max from liability because the Bank's action would be on the guaranty, not on the note; however, had Max paid Bess's debt to the Bank, Max would have acquired, under principles of subrogation, all of the rights the Bank had against Bess, including the right to pursue either judicial or nonjudicial sale of the security. (265 Cal.App.2d at pp. 44-45.) "If the Bank elects nonjudicial sale of the security, the respective positions of the parties are substantially different from those which exist following exercise of the other options. If Max is required to pay the Bank the unpaid balance of the note, he does not thereby acquire any rights from the Bank by subrogation, because the Bank no longer has any rights against Bess, and no security remains after the sale. Bess has no power of redemption. If Max, the guarantor, can successfully assert an action in assumpsit against Bess for reimbursement, the obvious result is to permit the recovery of a 'deficiency' judgment against the debtor following a nonjudicial sale of the security under a different label. It makes no difference to Bess's purse whether the recovery is by the original creditor in a direct action following nonjudicial sale of the security, or whether the recovery is in an action by the guarantor for reimbursement of the same sum." (265 Cal.App.2d at pp. 45-46, fn. omitted.)

The court in *Gradsky* concluded that the "Legislature clearly intended to protect the debtor from personal liability following a nonjudicial sale of the security. No liability, direct or indirect, should be imposed upon the debtor following a nonjudicial sale of the security. To permit a guarantor to recover reimbursement from the debtor would permit circumvention of the legislative purpose in enacting section 580d." (265 Cal.App.2d at p. 46.) The court in *Gradsky* then went on to hold that the Bank could not recover the deficiency from the guarantor not because section 580d directly prevented such recovery, but because by electing a remedy (nonjudicial foreclosure) which destroyed both the security and the possibility of the guarantor's reimbursement from the debtor, the Bank was estopped from pursuing the guarantor for a deficiency. (*Id.,* at pp. 46-47.)

We find the discussion in *Gradsky* pertaining to the relationship between the debtor and the guarantor to be of particular significance to the instant

case. The policies of mortgage guaranty insurance issued by CMAC serve the same purpose of the guaranty in *Gradsky.* Had there been no indemnity agreements in the instant case, and had CMAC sought reimbursement from Sampsons under principles of subrogation, such recovery would be barred for the reasons set out in *Gradsky.* The question we must now address is whether the execution of the indemnity agreements by Sampsons sufficiently distinguishes their situation from the debtor in *Gradsky.* We conclude it does not. The instant indemnity agreements add nothing to the liability Sampsons already incurred as principal obligors on the notes (see *Union Bank* v. *Dorn* (1967) 254 Cal.App.2d 157, 159 [61 Cal.Rptr. 893]) and because " ' "several papers relating to the same subject-matter and executed as parts of substantially one transaction, are to be construed together as one contract," ' " (*Freedland* v. *Greco, supra,* 45 Cal.2d 462, 468), we conclude the agreements are simply attempts to have the Sampsons waive in advance the protection against a deficiency judgment afforded by section 580d, which waiver is against public policy and void. (*Id.,* at pp. 467-468.) To splinter the transaction and view the indemnity agreements as separate and independent obligations, as urged by CMAC, is to thwart the purpose of section 580d by a subterfuge (*id.,* at p. 468), a result we cannot permit. Accordingly, the trial court properly granted summary adjudication as to the cause of action for breach of contract.

## II

### PUNITIVE DAMAGES

■ With respect to CMAC's demand for punitive damages as an element of damages of its cause of action for fraud, the trial court granted summary adjudication of the issue that "as a matter of law pursuant to California Civil Code section 2848, that [CMAC] is not entitled to recover punitive damages from [the Sampsons]." Section 2848 provides that a surety "upon satisfying the obligation of the principal, is entitled to enforce every remedy which the creditor then has against the principal to the extent of reimbursing what he has expended . . . ."

That provision has no application to the instant pleading, in which CMAC is not seeking relief upon a theory of subrogation, but rather under a common law theory of fraud in the inducement. Thus, section 2848 of the Civil Code does not bar punitive damages in the instant case.

■ Because our task on review of a grant of a motion for summary judgment is to determine the validity of the ruling of the trial court as a matter of law regardless of the reasons that may have motivated it (*Spradlin*

v. *Cox* (1988) 201 Cal.App.3d 799, 806 [247 Cal.Rptr. 347]), and because failure to state a cause of action is a proper ground for granting summary judgment (*Lombardo* v. *Santa Monica Young Men's Christian Assn.* (1985) 169 Cal.App.3d 529, 538 [215 Cal.Rptr. 224]), we address the issue, first raised in Sampsons' opposition to petition for writ of mandate, of whether CMAC has stated a cause of action for fraud.[4] If no cause of action for fraud has been stated, there is nothing to which punitive damages can attach.

Sampsons contend that because Western Empire purchased the properties at the trustee's sale after a full credit bid, it realized the full value of their security, the underlying debt was fully satisfied, and Western Empire was not damaged. It thus had no valid claims under the policies of mortgage guaranty insurance, and CMAC was not obligated to pay such "claims." In other words, Sampsons imply that the fraud cause of action fails to state a claim because the amounts paid by CMAC to Western Empire were not proximately caused by their alleged fraudulent misrepresentations.

■ In fraud, the pleading must show a cause and effect relationship between the fraud and damages sought; otherwise no cause of action is stated. (*Zumbrun* v. *University of Southern California* (1972) 25 Cal.App.3d 1, 12 [101 Cal.Rptr. 499, 51 A.L.R.3d 991].) General pleading of the legal conclusion of fraud is insufficient; the facts constituting the fraud must be alleged, and the policy of liberal construction of pleadings will not ordinarily be invoked to sustain a pleading defective in any material respect. (*Committee on Children's Television, Inc.* v. *General Foods Corp.* (1983) 35 Cal.3d 197, 216 [197 Cal.Rptr. 783, 673 P.2d 660].) The pleading should be sufficient to enable the court to determine whether, on the facts pleaded, there is any foundation, prima facie at least, for the charge of fraud. (*Id.*, at p. 217.)

■ The fraud cause of action of the first amended complaint alleges that Sampsons made false statements in their loan applications concerning their combined gross monthly income, that no portion of the down payment for the properties was borrowed, and that they never had property sold through foreclosure. The loan applications were then transmitted by the lender to CMAC for purposes of writing mortgage guaranty insurance coverage; in reliance on the statements therein, CMAC was induced to and did provide mortgage guaranty insurance coverage for loans taken out by

---

[4] Our March 22, 1989, order to show cause stated that should petitioner wish to file a reply to the written return, the reply was to be served and filed by a certain date. CMAC has not availed itself of the opportunity to file a reply or to address the issues raised in the Sampsons' opposition.

Sampsons; and as a result of the alleged fraud, CMAC was required to pay a total of about $175,000 to Western Empire, successor in interest to Commonwealth Bank, following the Sampsons' default on the loans and demand by Western Empire for reimbursement of the resulting loss.

Before addressing the issue of proximate cause, we address the issue of the viability of a fraud cause of action in the first instance. Before 1985, the appellate courts were split on the issue of whether the antideficiency statutes precluded a fraud cause of action after a foreclosure sale of property. The court in *Glendale Fed. Sav. Loan Assn.* v. *Marina View Heights Dev. Co.* (1977) 66 Cal.App.3d 101, 138-139 [135 Cal.Rptr. 802], concluded that an action for damages for fraud is not one for a deficiency judgment and is not barred by sections 580b and 580d. In *Glendale,* however, the lender's nonjudicial foreclosure resulted in a deficiency.

The court in *First Fed. Sav. Loan Assn.* v. *Lehman* (1984) 159 Cal.App.3d 537 [205 Cal.Rptr. 600], also involving a deficiency (*id.,* at p. 540), distinguished *Glendale* on the ground that there the misrepresentations involved the value of the real property security, while in *First Federal,* the Lehmans allegedly made misrepresentations to the lender concerning whether the residence would be owner-occupied and certain facts pertaining to the down payment and secondary financing. The court there concluded that because the Lehmans' alleged misrepresentations were totally unrelated to the value of First Federal's real property security, the rule allowing actions for fraud damages did not apply to the case. (*Id.,* at pp. 542-543.) "Lacking the essential causal nexus, we agree with the lower court's assessment that First Federal's fraud cause of action represents an improper attempt to obtain a deficiency judgment through circumvention of applicable antideficiency statutes." (*Id.,* at p. 543.)

"In 1985, the Legislature, intending to curtail fraud in the real estate market and to vitiate the holding in *Lehman* enacted Finance Code sections 779, 7459, 7460, and 15102. Under these statutes, banks, savings and loan associations, and credit unions may now maintain an action for damages, including punitive damages not exceeding 50 percent of actual damages, against a borrower based on fraud when the conduct induced the lender to make a real estate loan. To avoid any ambiguity, such actions are expressly excepted from the antideficiency provisions of Code of Civil Procedure sections 726, 580a, 580b, and 580d. Because of evidence that fraud was most prevalent in loans for large, single-family dwellings, multiple-unit dwellings and commercial property, the legislation exempted loans secured by single-family residential real property, when the property is *actually occupied by the borrower* and the loan is for $150,000 or less." (*Guild*

*Mortgage Co.* v. *Heller, supra,* 193 Cal.App.3d 1505, 1512-1513, fns. omitted, original italics.)

The foregoing statutes do not expressly apply to mortgage guaranty insurers, but we do not need to resolve the issue of whether they should afford CMAC herein with a cause of action for fraud in the inducement of the insurance policies. We conclude that Financial Code section 779 does not impact the full credit bid rule (*Sumitomo Bank* v. *Taurus Developers, Inc., supra,* 185 Cal.App.3d 211, 221, fn. 4), and the rule's effect of destroying both the lender's and insurer's causes of action for fraud.

■ At a trustee's sale, the creditor-beneficiary is entitled to bid on credit up to the amount of the total obligation he is owed. (*Passanisi* v. *Merit-McBride Realtors, Inc., supra,* 190 Cal.App.3d 1496, 1503.) A full credit bid is a bid "in an amount equal to the unpaid principal and interest of the mortgage debt, together with the costs, fees and other expenses of the foreclosure." (*Cornelison* v. *Kornbluth* (1975) 15 Cal.3d 590, 606, fn. 10 [125 Cal.Rptr. 557, 542 P.2d 981].) If the creditor-beneficiary makes a full credit bid for the property and is the successful bidder, then the proceeds from the trustee's sale are exactly sufficient to satisfy the debt, there is no deficiency and no surplus. (*Passanisi* v. *Merit-McBride Realtors, Inc., supra,* 190 Cal.App.3d at p. 1503.) In this event, the creditor has suffered no damages and cannot recover under an insurance policy. (*Sumitomo Bank* v. *Taurus Developers, Inc., supra,* 185 Cal.App.3d at pp. 219, 220; see also *Universal Mortg. Co., Inc.* v. *Prudential Ins. Co.* (9th Cir. 1986) 799 F.2d 458, 461, holding that a full credit bid at trustee's sale precluded lender's recovery under fire and casualty insurance policy for interior damage to property discovered after the sale.)

The lender is not required to open the bidding with a full credit bid, but may bid whatever amount he thinks the property worth. (*Sumitomo Bank* v. *Taurus Developers, Inc., supra,* 185 Cal.App.3d at p. 219.) Many creditors continually enter low credit bids to provide access to additional security or additional funds; in such case, a deficiency balance of the debt would have remained for which the lender would have had an entitlement out of the insurance policy. (*Ibid.*)

■ In light of the full credit bid by Western Empire, a fact raised by Sampsons in their reply to CMAC's opposition to their motion for summary judgment and not refuted by CMAC, the instant cause of action for fraud

fails to show any damage to Western Empire. Thus, the instant pleading fails to allege any causal connection between the alleged representations or nondisclosures occurring during the loan transaction and CMAC's decision to pay the claims submitted to it by Western Empire. Moreover, at the time CMAC made its decision to pay the claims submitted to it by Western Empire, there is no allegation that it relied upon any alleged misrepresentations occurring during the loan transaction or during the transaction resulting in the issuance of its policies. Thus, the pleading also lacks the essential element of justifiable reliance.

The facts here can be distinguished from those in *Guild Mortgage Co.* v. *Heller, supra,* 193 Cal.App.3d 1505, where the court upheld an action for fraud in the inducement of a loan even though the purported misrepresentations did not directly relate to the value of the secured property. There, the lender, Guild Mortgage, sold the secured note to the Federal Home Loan Mortgage Corporation (FHLMC), which foreclosed and purchased the property at a nonjudicial sale with a full credit bid. Subsequently, Guild Mortgage was compelled under federal regulations to repurchase the property and in reselling the property on the open market suffered a loss in excess of $50,000. (193 Cal.App.3d at p. 1509.) The court concluded: "Regardless of whether the FHLMC purchased the property by making a full credit bid, the complaint avers that plaintiff Guild Mortgage and not the FHLMC was damaged in an amount exceeding $50,000 when it was required to repurchase and sell the property on the open market. The complaint further alleges that the repurchase was necessitated by defendants' fraud and that the loan would not have been made in the absence of the purported misrepresentations. Even under the rule articulated in *Lehman,* these allegations are sufficient to establish a clear causal connection between defendants' alleged fraudulent conduct and the damages sustained." (193 Cal.App.3d at p. 1514.)

Unlike the situation in *Guild Mortgage,* CMAC has not alleged facts showing that its payment of the claims was necessitated by or caused by the Sampsons' alleged fraud. As the pleading fails to state a cause of action for fraud, there is nothing to which a claim for punitive damages can attach. Thus, the trial court properly granted summary adjudication of the issue that CMAC could not recover punitive damages.

## DISPOSITION

The petition is denied.

Johnson, J., and Woods (Fred), J., concurred.

A petition for a rehearing was denied July 11, 1989, and petitioner's application for review by the Supreme Court was denied August 31, 1989.