[No. G035111. Fourth Dist., Div. Three. Dec. 15, 2005.]

TRUST ONE MORTGAGE CORPORATION, Plaintiff and Respondent, v. INVEST AMERICA MORTGAGE CORPORATION et al., Defendants and Appellants.

COUNSEL

Weinstock & Scavo and Brett A. Mendell for Defendants and Appellants.

Solomon, Grindle, Silverman & Spinella, Timothy J. Silverman and Benjamin T. Morton for Plaintiff and Respondent.

OPINION

**FYBEL, J.—**

### INTRODUCTION

Defendants Invest America Mortgage Corporation (Invest America) and Lynda Sens appeal from a summary judgment entered in favor of plaintiff Trust One Mortgage Corporation (Trust One) on claims of breach of contract, indemnity, breach of guaranty, and declaratory relief. We affirm.

Invest America and Trust One were parties to a broker agreement by which Trust One funded real estate secured loans brokered by Invest America. This lawsuit arose out of two loans made, pursuant to that broker agreement, to a Georgia resident and secured by real property in Georgia. After the borrower's early default, the real property security was foreclosed nonjudicially, leaving a substantial deficiency. Trust One sued Invest America to recover its losses under the broker agreement's indemnification provision, which required Invest America to indemnify losses or repurchase loans in the event of a borrower's early default or fraud in the loan application.

Invest America argues Trust One is barred from recovery because it did not comply with Georgia law requiring a nonjudicial foreclosure to be submitted to and approved by a court before seeking to recover a deficiency. Trust One contends Georgia law is inapplicable because Trust One sued for indemnification under the broker agreement, not for a deficiency, and the broker agreement contained a provision stating the agreement was governed by California law.

The choice of law provision is enforceable and the broker agreement is governed by California law. This conclusion leads to the primary issue: Is the indemnification provision in the broker agreement enforceable under California's antideficiency legislation? We hold the indemnification provision is an indemnity, not a guaranty, and does not violate California's antideficiency laws because Invest America, the indemnitor, was not the same as or

substantially identified with the principal loan obligor. The indemnification provision is enforceable notwithstanding the nonjudicial foreclosure.

FACTS

Invest America is a Georgia corporation. Its business is to originate, broker, and solicit residential real property loans. Lynda Sens is Invest America's president. Trust One is a California corporation and has its principal place of business in Irvine. Trust One, a mortgage banker, funds the type of loans brokered by Invest America.

In May 2002, Invest America and Trust One entered into a loan correspondent/broker agreement (the Broker Agreement). The Broker Agreement was entered into in California. Under the Broker Agreement, Trust One funded and closed loan packages for residential real property loans negotiated by Invest America. Trust One agreed to pay a commission to Invest America for each loan package Trust One accepted, funded, and closed. The Broker Agreement states, "[e]ach such Loan shall conform in all respects to all terms, conditions, representations, warranties and covenants in this Agreement." Sens entered into a guaranty agreement by which she guaranteed the performance of Invest America's obligations under the Broker Agreement.

In section 3.6 of the Broker Agreement, Invest America represented and warranted that "[n]o representation, warranty or written statement made by [Invest America] in . . . any schedule, exhibit, report, loan file, written statement or certificate furnished to Trust One in connection with the transactions contemplated hereby by [Invest America], contains, or will contain, any untrue statement of a material fact or omits, or will omit, to state a material fact necessary to make the statements contained herein or therein not misleading."

Section 7.1 of the Broker Agreement, entitled *"Indemnification,"* states in relevant part: "In addition to any other rights and remedies that Trust One may have, [Invest America] shall indemnify and hold Trust One . . . harmless from and against, and shall reimburse it or them for, any repurchase demand by an Insurer/Investor, any losses, (including pair-off fees and loss of Servicing Rights), damages, deficiencies, claims, causes of action or expenses of any nature, (including attorney's fees), incurred before or after any Sale Date to the extent resulting from . . . [¶] . . . [¶] (c) Any indication of fraud in the origination of any loan, either immaterial or material, whether or not as a result of any act or omission of [Invest America], or any employee, representative or agent of [Invest America]; or [¶] (d) Any delinquency during any one of the first six payments which remains delinquent for a period of sixty days."

If a ground exists for indemnification, section 7.2 of the Broker Agreement permits Trust One to demand that Invest America cure the breach or repurchase the loan. Section 9.8 of the Broker Agreement states: *"Governing Laws.* This Agreement shall be governed by, construed and enforced in accordance with the laws of the State of California without reference to the choice of law principles thereof."

On June 5, 2002, Invest America presented Trust One with a loan package including an application from Margaret R. Perry (the Borrower) for a loan to be secured by a residence at 966 Mathews Street SW, Atlanta, Georgia (the Mathews Property). The loan package included an appraisal assigning a value, as of April 30, 2002, of $325,000 to the Mathews Property. Trust One accepted the loan package and, on June 10, 2002, funded the loan (the Mathews Loan) in the amount of $301,500. The Mathews Loan was memorialized by a promissory note in the principal amount of $301,500 and secured by a security deed.

On July 24, 2002, Invest America presented Trust One with a loan package including an application from the Borrower for a loan to be secured by a residence at 1753 Beechwood Boulevard, Atlanta, Georgia (the Beechwood Property). Trust One accepted the loan package and, on July 24, 2002, funded the loan (the Beechwood Loan) in the amount of $100,800. The Beechwood Loan was memorialized by a promissory note in the principal amount of $100,800 and secured by a security deed.

Trust One assigned the Mathews Loan and the Beechwood Loan to IMPAC Funding Corporation (IMPAC). Those assignments were made pursuant to an agreement between Trust One and IMPAC called the IMPAC Seller Agreement. The IMPAC Seller Agreement requires Trust One either to repurchase assigned loans or to indemnify IMPAC for losses caused by a borrower's early default or in the event of a misstated appraisal.

The Borrower defaulted on the Mathews Loan after making only three payments. The Borrower defaulted on the Beechwood Loan after only one payment. Neither default was ever cured.

The two security deeds were foreclosed nonjudicially. Both the Mathews Property and the Beechwood Property were sold by public auction on May 6, 2003. The Mathews Property sold for $140,000. The Beechwood Property sold for $63,000.

As part of the process of foreclosing the security deed for the Mathews Loan, IMPAC obtained two broker's price options from realtors in the Atlanta area and commissioned two residential appraisal field review reports on the

Mathews Property. Those options and reports assigned values to the Mathews Property as of the date of sale that were substantially lower than the value assigned by the appraisal in the loan package presented by Invest America. The record does not show whether similar options and reports were prepared on the Beechwood Property.

Following the foreclosure sales, IMPAC made a written demand on Trust One to repurchase the Mathews Loan and the Beechwood Loan. Trust One and IMPAC agreed that instead of repurchasing the loans, Trust One would indemnify IMPAC for its losses. Trust One and IMPAC entered into two indemnification agreements, one for the Mathews Loan, and the other for the Beechwood Loan. Pursuant to these indemnification agreements, Trust One paid IMPAC $142,285.16 on the Mathews Loan and $31,418.85 on the Beechwood Loan.

Trust One demanded, pursuant to the Broker Agreement, that Invest America indemnify it for the sums paid to IMPAC on the Mathews Loan and the Beechwood Loan. Invest America declined.

### PROCEEDINGS IN THE TRIAL COURT

Trust One sued Invest America and Sens seeking damages for losses sustained on the Mathews Loan and the Beechwood Loan. The complaint has six causes of action: (1) breach of the Broker Agreement (the Mathews Loan) against Invest America, (2) breach of the Broker Agreement (the Beechwood Loan) against Invest America, (3) breach of guaranty against Sens, (4) negligence against Invest America and Sens, (5) express indemnity against Invest America and Sens, and (6) declaratory relief against Invest America and Sens. Invest America and Sens filed a cross-complaint against the Borrower and other third parties.

Trust One moved for summary adjudication of all causes of action but negligence. The trial court granted the motion in full and awarded Trust One $173,704.01 in damages. On November 22, 2004, a judgment was entered in favor of Trust One despite the pending negligence cause of action. Trust One dismissed the negligence cause of action without prejudice on December 7, 2004. Invest America and Sens timely appealed.[1]

In an order filed September 28, 2005, we expressed concern over appellate jurisdiction. In response, the parties stipulated to amend the judgment nunc pro tunc to include dismissals with prejudice of Trust One's negligence cause

---

[1] In opposing the motion for summary adjudication, Sens denied signing the guaranty agreement and claimed the signature on it was not hers. Sens does not make those claims on appeal and does not challenge the judgment against her for breach of guaranty.

of action and of Invest America and Sens's cross-complaint. We accepted the stipulation, ordered the judgment be deemed so amended nunc pro tunc, and confirmed our jurisdiction. (*Sullivan v. Delta Air Lines, Inc.* (1997) 15 Cal.4th 288, 308–309 [63 Cal.Rptr.2d 74, 935 P.2d 781].)

ANALYSIS

Trust One sought to enforce the indemnification provision of the Broker Agreement against Invest America. The indemnification provision required Invest America to indemnify Trust One for losses caused by "[a]ny delinquency during any one of the first six payments which remains delinquent for a period of sixty days." The Borrower defaulted on the Mathews Loan after making only three payments and defaulted on the Beechwood Loan after only one payment. IMPAC foreclosed and sought indemnification from Trust One for its losses. Trust One, in turn, sought indemnification from Invest America for the amount paid to IMPAC.[2]

### I. *California Law Governs the Broker Agreement.*

The focus of Invest America's argument is that Georgia Code section 44-14-161, entitled "Confirmation of Foreclosure Sales," applies to enforcement of the indemnification provision and bars recovery. That Georgia Code section provides that following nonjudicial foreclosure of a real property, "no action may be taken to obtain a deficiency judgment unless the person instituting the foreclosure proceedings shall, within 30 days after the sale, report the sale to the judge of the superior court of the county in which the land is located for confirmation and approval and shall obtain an order of confirmation and approval thereon." (Ga. Code, § 44-14-161, subd. (a).)

██ The Broker Agreement contains a choice of law provision requiring the agreement to be governed by, construed, and enforced in accordance with California law. A freely and voluntarily agreed-upon choice of law provision in a contract is enforceable if the chosen state has a substantial relationship to the parties or the transaction or any other reasonable basis exists for the parties' choice of law. (*Nedlloyd Lines B.V. v. Superior Court* (1992) 3

---

[2] Invest America and Sens argue in their reply brief that Trust One failed to produce evidence it was obligated to indemnify IMPAC. In support of its summary adjudication motion, Trust One submitted (1) evidence of an indemnity in favor of IMPAC executed by Trust One when assigning the Mathews Loan and the Beechwood Loan to IMPAC, and (2) copies of the indemnification agreements with IMPAC made after the Borrower's defaults. That evidence met Trust One's burden of producing evidence making a showing it was required to indemnify IMPAC for its losses resulting from the Mathews Loan and the Beechwood Loan. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [107 Cal.Rptr.2d 841, 24 P.3d 493].)

Cal.4th 459, 466 [11 Cal.Rptr.2d 330, 834 P.2d 1148].) The choice of law is reasonable if one of the parties lives in the chosen state. (*Hughes Electronics Corp. v. Citibank Delaware* (2004) 120 Cal.App.4th 251, 258 [15 Cal.Rptr.3d 244].)

Trust One is a California corporation and has its principal place of business in Irvine. Those facts are sufficient to establish a reasonable basis for enforcing the Broker Agreement's choice of law provision. (*Hughes Electronics Corp. v. Citibank Delaware, supra,* 120 Cal.App.4th at p. 258.)

## II. *The Indemnification Provision of the Broker Agreement Is an Indemnity, Not a Guaranty.*

■ The determination California law governs the Broker Agreement is just the first step in the analysis. Even though the real property security was located in Georgia, the indemnification provision of the Broker Agreement is subject to California's antideficiency legislation. (See *Consolidated Capital Income Trust v. Khaloghli* (1986) 183 Cal.App.3d 107, 111–112 [227 Cal.Rptr. 879].) California's antideficiency legislation is comprised of sections 580a, 580b, 580c, 580d, and 726 of the Code of Civil Procedure. "These provisions [Code of Civil Procedure sections 580a–580d and 726] indicate a considered course on the part of the Legislature to limit strictly the right to recover deficiency judgments, that is, to recover on the debt more than the value of the security." (*Brown v. Jensen* (1953) 41 Cal.2d 193, 197 [259 P.2d 425].) California law bars a deficiency judgment following nonjudicial foreclosure of real property (Code Civ. Proc., § 580d) or following foreclosure of a purchase money deed of trust on a residence (*id.,* § 580b).

■ Invest America contends the indemnification provision of the Broker Agreement really is a loan guaranty, the enforcement of which constitutes an action for a deficiency prohibited by California law under *Union Bank v. Gradsky* (1968) 265 Cal.App.2d 40 [71 Cal.Rptr. 64] (*Gradsky*). California law recognizes a distinction between an agreement to indemnify and a guaranty. "Indemnity is a contract by which one engages to save another from a legal consequence of the conduct of one of the parties, or of some other person." (Civ. Code, § 2772.) "A surety or guarantor is one who promises to answer for the debt, default, or miscarriage of another, or hypothecates property as security therefor." (*Id.,* § 2787.) A guarantor makes a direct promise to perform the principal's obligation in the event the principal fails to perform. An indemnitor does not make a direct promise to perform the principal's obligation, but promises to reimburse the indemnitee for losses suffered or to hold the indemnitee harmless. (*Gill v. Johnson* (1937) 21 Cal.App.2d 649, 657 [69 P.2d 1016].)

The indemnification provision of the Broker Agreement is not a direct promise by Invest America to perform the borrowers' obligations. The indemnification provision states Invest America "shall indemnify and hold Trust One . . . harmless from" any losses resulting from the identified conditions. The indemnification provision does not obligate Invest America to indemnify Trust One for all borrowers' defaults, but only from losses resulting from the conditions listed. As Trust One points out, Invest America's obligations under the indemnification provision might be triggered without a borrower default, for example, when the loan package contains misrepresentations about the value of the property securing the loan. Thus, the indemnification provision in the Broker Agreement is just that—an indemnification.

### III. *The Indemnification Is Valid Under California's Antideficiency Legislation.*

Our conclusion the indemnification provision of the Broker Agreement is an indemnity governed by California law does not end the analysis. We next must determine whether the indemnification is unenforceable under California's antideficiency legislation.

### A. *Whether an Indemnity Violates California's Antideficiency Legislation: The* Commonwealth Mortgage *and* Gradsky *Cases.*

In *Commonwealth Mortgage Assurance Co. v. Superior Court* (1989) 211 Cal.App.3d 508, 515 [259 Cal.Rptr. 425] (*Commonwealth Mortgage*), the court held an indemnity agreement was unenforceable because it was an artifice designed to avoid the proscriptions of the antideficiency laws. In *Commonwealth Mortgage*, the borrowers entered into agreements to indemnify a mortgage guaranty insurer that insured the borrowers' performance on promissory notes secured by deeds of trust. (*Id.* at pp. 511–512.) The borrowers defaulted, and the insurer sought to enforce the indemnifications after paying the lender's claim. (*Id.* at pp. 512–513.) The court framed the primary issue as whether the indemnity agreements were unenforceable as a wrongful attempt to circumvent antideficiency legislation. (*Id.* at p. 511.) "[I]n addressing the issue of whether the indemnity contracts herein are unenforceable we look to their purpose and effect in order to determine whether they are attempts to recover deficiencies in violation of [Code of Civil Procedure] section 580d." (*Commonwealth Mortgage, supra,* 211 Cal.App.3d at p. 515.)

The *Commonwealth Mortgage* court found analogous *Gradsky, supra,* 265 Cal.App.2d 40. In *Gradsky*, the plaintiff bank made a construction loan to a

property owner and secured the loan with a first trust deed on the property. (*Id.* at p. 41.) As additional security for the loan, the defendant, a general contractor, guaranteed the property owner's note. (*Ibid.*) When the property owner defaulted, the bank first foreclosed the trust deed nonjudicially and then sued the defendant/guarantor to recover the unpaid balance on the loan after application of sale proceeds. (*Id.* at p. 42.) The *Gradsky* court held the bank was estopped from recovering the unpaid loan balance from the guarantor because the election to foreclose nonjudicially destroyed the guarantor's right of reimbursement from the principal debtor. (*Id.* at pp. 46–47.) The *Gradsky* court determined, as between the bank and the guarantor, the loss ultimately should fall on the bank because it made the election to pursue a nonjudicial foreclosure and owed the guarantor a duty not to impair the guarantor's remedies against the principal debtor. (*Ibid.*)

Discussing *Gradsky*, the *Commonwealth Mortgage* court stated: "We find the discussion in *Gradsky* pertaining to the relationship between the debtor and the guarantor to be of particular significance to the instant case. The policies of mortgage guaranty insurance issued by [the insurer] serve the same purpose of the guaranty in *Gradsky*. Had there been no indemnity agreements in the instant case, and had [the insurer] sought reimbursement from [the borrowers] under principles of subrogation, such recovery would be barred for the reasons set out in *Gradsky*. The question we must now address is whether the execution of the indemnity agreements by [the borrowers] sufficiently distinguishes their situation from the debtor in *Gradsky*. We conclude it does not. The instant indemnity agreements add nothing to the liability [the borrowers] already incurred as principal obligors on the notes [citation] . . . ." (*Commonwealth Mortgage, supra,* 211 Cal.App.3d at pp. 516–517.) The *Commonwealth Mortgage* court thus concluded "the agreements are simply attempts to have the [borrowers] waive in advance the protection against a deficiency judgment afforded by [Code of Civil Procedure] section 580d, which waiver is against public policy and void." (*Commonwealth Mortgage, supra,* 211 Cal.App.3d at p. 517.)

Was *Commonwealth Mortgage*'s conclusion that the indemnity was unenforceable based on an estoppel theory or a waiver/substantial identity theory?[3] The *Commonwealth Mortgage* court treated indemnities as analogous to guaranties analyzed under *Gradsky*, suggesting the estoppel theory of that case applied to indemnities. (*Commonwealth Mortgage, supra,* 211

---

[3] The discussion in *Commonwealth Mortgage* on the issue whether the indemnity agreement was enforceable apparently was dictum because there might not have been a deficiency. The California Supreme Court has commented: "The precedential value of such statements in *Commonwealth Mortgage* also is clouded by a factual enigma the court left unresolved. As the Court of Appeal recognized, the lender in that case purchased the real property security at the trustee's sale for a full credit bid, which ought to have satisfied the debt." (*Western Security Bank v. Superior Court* (1997) 15 Cal.4th 232, 250, fn. 7 [62 Cal.Rptr.2d 243, 933 P.2d 507].)

Cal.App.3d at pp. 516–517.) The *Gradsky* theory is that if the creditor elects to destroy the guarantor's recourse against the borrower—for example, by pursuing a nonjudicial foreclosure—then the creditor may be estopped from seeking the deficiency from the guarantor. (See *Consolidated Capital Income Trust v. Khaloghli, supra,* 183 Cal.App.3d at p. 113.) Such an estoppel was held to prevent the creditor electing to pursue nonjudicial foreclosure from recovering a deficiency from a true guarantor.

But in resolving the question whether the facts of its case were distinguishable from *Gradsky*, the *Commonwealth Mortgage* court analyzed the situation under a waiver/substantial identity theory, asking whether the indemnity was an obligation independent of the underlying debt or an attempt to have the debtors waive the antideficiency protections. If the indemnitor and the principal obligor are substantially the same, the indemnity may be seen as an invalid attempt to have the obligor waive the antideficiency protections. (*Commonwealth Mortgage, supra,* 211 Cal.App.3d at p. 517.) In *Western Security Bank v. Superior Court, supra,* 15 Cal.4th at page 249, the California Supreme Court described *Commonwealth Mortgage* as a waiver case, stating the *Commonwealth Mortgage* court concluded the indemnities "were invalid attempts to have the debtors *waive* in advance the statutory prohibition against deficiency judgments." (Italics added.)

*Torrey Pines Bank v. Hoffman* (1991) 231 Cal.App.3d 308 [282 Cal.Rptr. 354] (*Torrey Pines*) also treated *Commonwealth Mortgage* as a waiver case, and correctly stated the waiver/substantial identity test. In *Torrey Pines*, the trustees of a revocable living trust executed guaranties of a debt incurred by the trust. (*Torrey Pines, supra,* 231 Cal.App.3d at p. 312.) The court addressed the issue "whether such persons should be considered to be primary obligors of their trust's debt, to whom the antideficiency protections apply, as opposed to separate and distinct 'true guarantors' of the trust's debt." (*Ibid.*) To resolve that issue the court "appl[ied] the approach of *Commonwealth Mortgage* . . . and look[ed] to the purpose and effect of the agreements to determine whether they are attempts to recover deficiencies in violation of [Code of Civil Procedure] section 580d." (*Id.* at p. 320.) The court stated, "[t]he correct inquiry set out by the authority is whether the purported debtor is anything other than an *instrumentality* used by the individuals who guaranteed the debtor's obligation, and whether such instrumentality actually removed the individuals from their status and obligations as debtors. [Citation.] Put another way, are the supposed guarantors nothing more than the principal obligors under another name?" (*Ibid.*, italics added.)

Applying that test, the *Torrey Pines* court concluded the evidence of the transaction demonstrated "substantial identity" between the individual guarantors and the debtors. (*Torrey Pines, supra,* 231 Cal.App.3d at p. 320.)

Accordingly, the court held, "this particular trust device did not accomplish enough division between these interests to enable us to say that the purpose of the antideficiency law would be served by enforcing these personal guaranties as 'true' guaranties, as opposed to 'purported' guaranties." (*Id.* at p. 323.)

> B. *Summary Judgment Was Proper Because the Indemnification Provision Was Not an Attempt to Have the Borrower Waive the Antideficiency Legislation and Invest America Was Not Substantially Identical to the Principal Obligor.*

■ *Gradsky* was tightly reasoned, but was based on the pleadings and only addressed a guarantor's, not an indemnitor's, exposure. We conclude the waiver/substantial identity theory is the proper analysis for testing whether the indemnity provision violates California's antideficiency legislation. Here, unlike *Commonwealth Mortgage*, a third party unrelated to the Borrower executed the Broker Agreement containing the indemnification provision. That distinction is critical. Invest America is not the primary obligor or a related entity; Invest America is not "a principal obligor in guarantor's guise." (*River Bank America v. Diller* (1995) 38 Cal.App.4th 1400, 1422 [45 Cal.Rptr.2d 790].) The Broker Agreement was not executed as part of the Mathews Loan or the Beechwood Loan. Rather, the Broker Agreement was a separate transaction made well in advance of those loans and governed all loan packages Invest America presented to Trust One. (*Commonwealth Mortgage, supra,* 211 Cal.App.3d at p. 517.)

The purpose and effect of the Broker Agreement's indemnification provision therefore were not to recover a deficiency from the borrower in violation of the antideficiency laws. (*River Bank America v. Diller, supra,* 38 Cal.App.4th at p. 1423; *Commonwealth Mortgage, supra,* 211 Cal.App.3d at pp. 516–517.) The indemnification provision of the Broker Agreement was enforceable under California law.

Our conclusion is consistent with the legislative purposes of the antideficiency legislation. Those purposes are: " '(1) to prevent a multiplicity of actions, (2) to prevent an overvaluation of the security, (3) to prevent the aggravation of an economic recession which would result if creditors lost their property and were also burdened with personal liability, and (4) to prevent the creditor from making an unreasonably low bid at the foreclosure sale, acquir[ing] the asset below its value, and also recover[ing] a personal judgment against the debtor.' " (*Torrey Pines Bank v. Hoffman, supra,* 231 Cal.App.3d at p. 318.) Invest America, the loan broker, prepared the loan packages and obtained the appraisals, and therefore was in at least as good a

position as Trust One to prevent an overvaluation of the real property security. Because Trust One is not substantially related to the Borrower, enforcing the indemnity would not burden the Borrower with personal liability. For the same reason, enforcing the indemnity would not result in a personal judgment against the Borrower, even if Trust One or IMPAC acquired the secured properties for amounts below their respective fair market values. Both Trust One and Invest America are, we may infer, sophisticated businesses, and they entered the Broker Agreement freely and at arm's length.

We would also affirm under an estoppel/*Gradsky* theory. In their answer, Invest America and Sens alleged only a general equitable estoppel affirmative defense, did not allege any facts in support of that defense, and did not specifically allege a *Gradsky* defense.[4] Even assuming Invest America's answer was sufficient to preserve a *Gradsky*-type estoppel defense, Trust One was not required to disprove that defense to prevail on summary judgment. (Code Civ. Proc., § 437c, subd. (p)(1); see *Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at pp. 853–854.) To defeat summary judgment, Invest America could not rely upon the allegations of its affirmative defenses, but had the burden of production to make a sufficient showing of the existence of a triable issue of fact on a *Gradsky* defense. (Code Civ. Proc., § 437c, subd. (p)(1); see *Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at pp. 850–851.) Although it is undisputed IMPAC pursued nonjudicial foreclosure, Invest America submitted no evidence that either Trust One or its assignee, IMPAC, failed to comply with the Georgia Code section 44-14-161. Invest America failed to produce any evidence showing the foreclosures were not reported to the Georgia superior court of the county in which the secured real properties were located. As the trial court stated, "there is no evidence offered anywhere of noncompliance with the Georgia statute."

On appeal, Invest America argues its subrogation rights against the Borrower were impaired by noncompliance with Georgia Code section 44-14-161. We do not reach that issue because Invest America did not file a cross-complaint for impairment of subrogation rights, did not present that argument in opposition to Trust One's summary adjudication motion, did not submit any evidence to support its estoppel affirmative defense, and did not submit any evidence to support its fifth affirmative defense for offset.

---

[4] Invest America and Sens alleged as their estoppel affirmative defense: "As a separate and affirmative defense, these answering Defendants allege that the Complaint as a whole, and each and every cause of action contained therein, is barred by reason of acts, omissions, representations and the course of conduct of Plaintiffs and of Plaintiffs' authorized agent(s), and by which Defendants were led to believe by and to their detriment, thereby barring recovery under the doctrine of equitable estoppel."

## DISPOSTION

The judgment is affirmed. Respondent to recover costs incurred in this appeal.

Bedsworth, Acting P. J., and Aronson, J., concurred.