[No. G002012. Fourth Dist., Div. Three. July 7, 1986.]

CONSOLIDATED CAPITAL INCOME TRUST,
Plaintiff and Appellant, v.
KHOSRO KHALOGHLI, Defendant and Respondent.

## COUNSEL

Dirk A. Fulton, Drummy, Garrett, King & Harrison, Howard F. Harrison, John C. Murphy, Hetland & Hansen, John R. Hetland, Charles A. Hansen and Steven M. Morgen for Plaintiff and Appellant.

Stradling, Yocca, Carlson & Rauth, Richard C. Goodman, Randall J. Sherman, Cox, Castle & Nicholson, David A. Leipziger and Kenneth B. Bley for Defendant and Respondent.

## OPINION

CROSBY, J.— On cross motions for summary judgment, the superior court ruled for Khosro Khaloghli, an individual guarantor of a multi-million-dollar note and deed of trust on an apartment complex located in Texas, and against Consolidated Capital Income Trust, the lender, who brought this action on the note after it acquired the subject property in a nonjudicial foreclosure. Khaloghli successfully argued that Consolidated is not entitled to what amounts to a deficiency judgment because it destroyed his subrogation rights against the debtor by electing a nonjudicial foreclosure and, under the law of California, which is expressly made applicable to the note, Consolidated is estopped to pursue any deficiency by its election. Consolidated, however, produced evidence that Khaloghli had released any

rights he might have had against the debtor before the foreclosure. There is a triable issue of fact on that question, and we must reverse accordingly.

I

Consolidated, a California business trust, loaned in excess of $2 million to 707 Corporation in August 1980. The 707, a Nevada corporation, was solely owned by Khaloghli at the time; and the corporation's only asset was Bordeaux Estates, a large apartment complex in Houston, Texas. 707 secured the loan with two deeds of trust, one on property in California and another on Bordeaux Estates. The security on the latter was junior to other trust deeds totaling some $9.5 million. As part of the arrangement, Khaloghli, claiming a net worth of about $35 million, was required to personally guarantee the note. Both the guaranty and the note were explicitly to be construed under the laws of California, the trust deed under the laws of Texas.

The guaranty "waives any defense, right, privilege, or entitlement . . . to require any action to be commenced or remedy to be exhausted as against the maker of said Promissory Note, or subsequent endorsers of said Promissory Note, and . . . to require foreclosure of said Deeds of Trust or enforcement of any other instruments securing the Promissory Note." The guaranty also provides, "Notwithstanding anything contained in this agreement to the contrary, no acts or omission either by this undersigned or by the holder shall excuse the obligations of the undersigned other than payment in full of the loan obligations guaranteed hereby."

Khaloghli sold all the stock of 707 Corporation in 1981 to Tajico of Texas, Inc. In the spring of 1983, Tajico was in default on Consolidated's note; and the latter filed notices of election to sell in Texas with copies to 707 and Khaloghli. Tajico sought the protection of the bankruptcy court, and Consolidated moved to lift the automatic stay and brought this action against Khaloghli on the guaranty.

Meanwhile, in the fall of 1983, Khaloghli and Tajico agreed to sell Bordeaux Estates and arranged to divide potential proceeds. The agreement also provided that Tajico released Khaloghli from any claims arising from its acquisition of the stock in 707 Corporation and Khaloghli waived payment of the balance due him under the purchase agreement. In addition, Khaloghli released any claims he might have with respect to the note and deed of trust. The release included claims known and unknown per California Civil Code section 1542. The parties here do not agree as to who was released by Khaloghli concerning any claims under the note and deed of trust, however. Was it only Tajico? Or, as the language of the release appears to provide,

was 707 meant to be included also? A critical—and triable—factual issue arises from this ambiguity in the release and, as we shall explain, will require reversal of the grant of summary judgment.

Eventually, the bankruptcy stay was lifted, and in December 1983 a nonjudicial foreclosure sale of Bordeaux Estates took place. Khaloghli's attorney attended the sale but did not bid. Consolidated was the high bidder and purchased the property for the amount of the senior liens plus $1.7 million.

## II

Consolidated first raises a question of semantics. It claims, "This is not a lawsuit for a deficiency judgment. The borrower, 707, is not a party to this case, but is under the protection of the [b]ankruptcy [c]ourt in Texas. Respondent, Khaloghli, is not, and has not claimed to be, a borrower entitled to the protection of California's antideficiency statutes. This is, purely and simply, an action brought on a contract of guaranty." True, but Consolidated's claim cannot exceed the amount of the note plus interest and other proper charges discounted by $1.7 million payments against the note which may have been made before the default along with any other appropriate credits, and the value of its California security; and under certain circumstances a guarantor of a California note can obtain the protection of our antideficiency statutes. (*Union Bank* v. *Gradsky* (1968) 265 Cal.App.2d 40 [71 Cal.Rptr. 64].) Thus, although Consolidated is technically correct, the case is, in essence, one brought to obtain a deficiency judgment.

It is useful at the outset to ponder the factual setting from the point of view of the debtor, 707 Corporation. Would it be entitled to assert the protection of the antideficiency statute, Code of Civil Procedure section 580d, if Consolidated could proceed against it? The answer, as the trial court must have found, is clearly yes. ■ If a creditor elects to foreclose by means of a private sale which, unlike a judicial foreclosure, does not provide the equity of redemption, the creditor thereby waives any deficiency on the sale in this state.

■ Consolidated nonetheless reminds us that the deed of trust contains a Texas choice of law clause and Texas has no antideficiency law. Thus, Texas creditors may pursue a deficiency even after a private sale. The argument is unpersuasive. Both the note and the guaranty contain a California choice of law clause, and a suit on the deficiency is a suit on the note without regard to the deed or the location of the property. (*Kerivan* v. *Title Ins. & Trust Co.* (1983) 147 Cal.App.3d 225, 230 [195 Cal.Rptr. 53].) *Kerivan* specifically held that a deficiency action brought on a Colorado note secured by California property was subject to its Colorado choice of

law provision and Code of Civil Procedure section 580d was not applicable. (See also *Younker* v. *Reseda Manor* (1967) 255 Cal.App.2d 431 [63 Cal.Rptr. 197] and *Hersch and Co.* v. *C and W Manhattan Associates* (9th Cir. 1982) 700 F.2d 476.)

*Kerivan* explained its analysis by quoting from the Restatement Second of Conflict of Laws section 229, comment e: "'Issues which do not affect any interest in the land, although they do relate to the foreclosure, are determined . . . by the law which governs the debt for which the mortgage was given. Examples of such latter issues are the mortgagee's rights to hold the mortgagor liable for any deficiency remaining after foreclosure or to bring suit upon the underlying debt without having first proceeded against the mortgaged land.'" (*Kerivan* v. *Title Ins. & Trust Co., supra,* 147 Cal.App.3d at p. 231; see also *Kish* v. *Bay Counties Title Guaranty Co.* (1967) 254 Cal.App.2d 725, 733 [62 Cal.Rptr. 494].)

Somewhat ironically, Texas law appears to be in accord. (*First Commerce Realty Investors* v. *K-F Land Co.* (Tex.Civ.App. 1981) 617 S.W.2d 806.) ■ Thus, the rule is clear and solidly grounded: The law of the situs of the debt controls when the suit is brought against the debt (or a guaranty) and not the land.

Consolidated has taken its action against the Houston property under Texas law. The guaranty, however, as well as the underlying note, was negotiated and executed in California expressly to be governed by California law. It is unnecessary to consider Consolidated's other arguments to the effect that Code of Civil Procedure 580d is merely procedural and not substantive and the purpose of the statute is not served by its application in this case. We are persuaded California law applies and that Consolidated would not be entitled to a deficiency judgment against 707.

### III

Are a creditor's rights any greater against a guarantor than they are against the underlying debtor? Yes. ■ Guarantors are not specifically protected by the terms of Code of Civil Procedure sections 580b and 580d which "shield only the principal debtor and not the guarantors . . . who [are] separately and independently liable to plaintiff. [Citations.]" (*Bauman* v. *Castle* (1971) 15 Cal.App.3d 990, 994-995 [93 Cal.Rptr. 565].) The guarantor of a purchase money mortgage was held not to be shielded from a deficiency judgment in *Bauman;* and exactly because debtors with purchase money mortgages are specifically subject to antideficiency protection, that

decision makes perfect sense. A guaranty of a purchase money mortgage would be rendered nugatory at the outset if it were so protected because an effective guaranty would become a legal impossibility.

But guarantors have been held to be entitled to antideficiency protection in one circumstance. Where the creditor has elected to destroy the guarantor's recourse against the debtor, i.e., where, as here, it has elected to pursue a nonjudicial foreclosure, it may be estopped to assert the deficiency. (*Union Bank* v. *Gradsky, supra,* 265 Cal.App.2d 40.) Whether Consolidated should be estopped is the question we must consider next.

## IV

The essence of the *Gradsky* holding is as follows: "The creditor's recovery is not directly barred by section 580d of the Code of Civil Procedure. It is barred by applying the principles of estoppel. The estoppel is raised as a matter of law to prevent the creditor from recovering from the guarantor after the creditor has exercised an election of remedies which destroys the guarantor's subrogation rights against the principal debtor. The destruction of the guarantor's subrogation rights follows from the combination of the creditor's election to subject the security to nonjudicial sale and the operation of section 580d, which prevents both the creditor and the guarantor from obtaining any deficiency judgment against the debtor after nonjudicial sale of the security." (*Id.,* at p. 41.)

Did Consolidated's election to proceed by way of private sale cut off the guarantor's rights against the debtor in this case? Consolidated says no because Khaloghli had already released his rights against 707 *before* the sale, the rights would have been worthless in any event, and he specifically declined to acquire whatever rights were available by refusing to honor the guaranty before the sale despite ample opportunity and importuning to do so. Consolidated does not appear to claim the rights were waived in the guaranty itself, although that, too, appears to be an arguable position.

The October 1983 agreement which Consolidated claims released Khaloghli's rights against 707 begins, "THIS AGREEMENT is entered into this ___ day of October, 1983, by and between DR. KHOSRO KHALOGHLI, on one part (herein 'Khaloghli'), and TAJICO OF TEXAS, INC., a Texas corporation, on the other part (herein 'Tajico'), both of whom shall sometimes collectively be referred to as the 'Parties.'" Paragraph number 4 provides, "*Full Release*. By the execution of this Agreement the parties hereby agree to and do in fact release and discharge the other party hereto, its or their

agents, principals, successors, shareholders and assigns from any and all liability of any type whatsoever arising out of the execution and delivery of the Agreement, including without limitation, any actions which Tajico may have against Khaloghli resulting from representations and warranties contained in the Agreement and any actions or claims Khaloghli might have against 707 or Tajico resulting from the execution and delivery of the Khaloghli Note and Deed of Trust, provided however, that so long as 707 continues to own the Property, 707 shall remain obligated to Khaloghli under the terms of the Khaloghli Note and Deed of Trust subject to the terms of this Agreement. By the execution of this General Release, the parties intend this Release to release all claims of any type, whether known or unknown, and expressly waive the provisions of California Civil Code, Section 1542 which reads as follows: 'A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.'"

Consolidated argues this release specifically destroyed Khaloghli's subrogation rights against 707. Khaloghli replies that 707 was not a party to the agreement and the subrogation rights were not in effect at the time of the release because the nonjudicial foreclosure had not yet occurred. Citing a federal circuit court opinion and a hoary California case, he argues "a release only applies to matters in existence at the time the release is given." (See *Jersey Island Dredging Co.* v. *Whitney* (1906) 149 Cal. 269 [86 P. 691]; *Matter of Vehm Engineering Corporation* (9th Cir. 1975) 521 F.2d 186.) He adds, the purpose of the inclusion of 707 was to release Tajico from alter ego liability by releasing Tajico from "any actions or claims Khaloghli might have against 707 or Tajico resulting from the Khaloghli Note and Deed of Trust."

We have no way of resolving these questions. The agreement is entirely ambiguous as to whether subrogation rights flowing from the act of a third party which was on the horizon but had not yet occurred were contemplated by the release; and if they were not and 707 was not intended to be a party to the release, there is also a question of fact as to whether the Civil Code section 1542 waiver was to apply only to the parties or to the potential third party beneficiary, 707, as well. Also, it is not unreasonable to suggest the phrase "that so long as 707 continues to own the Property, 707 shall remain obligated to Khaloghli under the terms of the Khaloghli Note and Deed of Trust subject to the terms of this Agreement" was intended to preserve the very subrogation rights now at issue. In short, there exists a triable factual issue as to whether the release was intended to or did apply to Khaloghli's subrogation rights against 707 in the event of a suit on the guaranty.

Further complicating the problem is the question of whether Consolidated has waived the issue on appeal. Although vigorously arguing the point in both its opening and closing briefs, it has in a rather risky act of bravado stated in the latter, "[I]f it is a contested fact issue, [Consolidated] is willing to ignore it. There is so much that is uncontested that precludes Khaloghli's *Gradsky* defense, and mandates a judgment in favor of [Consolidated] enforcing its guaranty, that the presence or absence of a release leaving the subrogation rights worthless is virtually superfluous." Taking Consolidated's position as a whole, we can only interpret this language to mean that it would prefer to win as a matter of law than return for a trial on the merits. Because, as we shall conclude, Consolidated's preference cannot be fulfilled, we will afford the appropriate relief notwithstanding this puffing in the reply brief. If Consolidated does not wish to accept our determination, it may petition for rehearing seeking an affirmance of the judgment; we will, of course, comply.

## V

Finally, we examine the two arguments Consolidated is so certain must assure victory in this court as a matter of law. Since 707's only asset was said to be the foreclosed property, Khaloghli's subrogation remedy was, it claims, worthless in any event. Accordingly, under *Bauman* v. *Castle, supra,* 15 Cal.App.3d 990, Consolidated's election of a nonjudicial foreclosure was, it is argued, not prejudicial.

We believe this to be a misreading of *Bauman* and an interpretation which would swallow up *Gradsky* in a great many cases. The insolvency of the debtor is very often the reason the creditor looks to the guaranty. Moreover, *Bauman* speaks in terms of the guarantor's *right* to obtain a judgment in subrogation against the debtor, not his ability to recover on the judgment. Moreover, having deliberately cut off Khaloghli's recourse against 707, Consolidated seems in a poor position to ask the court to assess the damage it caused.

Even if it is presently the case that 707 is a hopeless target, who is to say that, having obtained a judgment, Khaloghli would not be some day fortunate enough to satisfy it against a revived 707? Further, as a minimum, Khaloghli may desire and may be able to acquire the corporate shell of 707 in the bankruptcy court with a judgment obtained against it. "Worthless" is in the eye of the beholder. Khaloghli lost a right by Consolidated's action; the value of that right is meaningless.

As to Consolidated's argument that Khaloghli waived his subrogation rights by ignoring its demand to make good the guaranty in exchange for the note and deed of trust and failing to bid on the property at the sale (see *Mariners Sav. & Loan Assn.* v. *Neil* (1971) 22 Cal.App.3d 232 [99 Cal.Rptr. 238, 49 A.L.R.3d 549]), our answer is short. ■ We recognize *Gradsky* acknowledges the possibility of waiver: "[A guarantor] can by express contract or by his subsequent actions either waive or be estopped from raising his defense to the creditor's action to recover any deficiency after a nonjudicial sale. [Citations.] The language of the guarantee agreement does not specifically waive the guarantor's defense based upon an election of remedies which destroys both the guarantor's subrogation rights and his right to proceed against the principal obligor for reimbursement. In [the] absence of an explicit waiver, we shall not strain the instrument to find that waiver by implication." (*Union Bank* v. *Gradsky, supra,* 265 Cal.App.2d at p. 48.) We agree. We cannot find a waiver as a matter of law on this record.

Although we alluded earlier to language in the guaranty which could arguably satisfy the express contract requirement of *Gradsky,* Consolidated does not raise the point. We assume, consequently, it does not find the contention to be worth the effort to set it forth. Nor do we find an "explicit" waiver by conduct, at least not as a matter of law. Waiver is generally a factual question, and there is considerable dispute among the litigants as to whether Consolidated's demands amounted to a tender of the note and deed of trust to Khaloghli. Moreover, despite his apparent wealth, Khaloghli could have been financially unable to react at the time as Consolidated suggests he should have. In other words, we have no evidence as to why Khaloghli chose to stand idle, assuming arguendo there was cause for him to act under *Mariners* if he could. We suppose it is possible his conduct indicated an explicit waiver, but other explanations are equally possible. Consolidated's argument amounts to a claim of res ipsa loquitur, but that doctrine is better left in the tort field where it belongs. If there was a waiver, Consolidated can prove it at trial.

## VI

For obvious reasons we decline to consider the nonappealable denial of Consolidated's cross motion for summary judgment in an original proceeding, as it has requested. This case belongs in a trial court.

The judgment is reversed and remanded with directions to deny the motion for summary judgment and, if the parties insist, to consider upon proper notice the other issues previously raised in the respective motions which

were not reached by the trial court by reason of its ruling. Each side shall bear its own costs on appeal.

Trotter, P. J., and Wallin, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 24, 1986.