[Nos. G011829, G012168. Fourth Dist., Div. Three. Apr. 15, 1993.]

CATHAY BANK, Plaintiff and Respondent, v.
TOM Y. LEE, Defendant and Appellant.

COUNSEL

Barton, Klugman & Oetting, Dale A. Hudson and John S. Chang for Defendant and Appellant.

Frandzel & Share, Thomas M. Robins III and Peter Csato for Plaintiff and Respondent.

**Opinion**

**SILLS, P. J.**—

I.

This is a loan guaranty case. Appellant Tom Y. Lee guaranteed a $5.2 million loan from Cathay Bank to a hotel firm of which he was the corporate secretary and a director. The loan was secured by a Quality Inn in Buena Park. The hotel firm defaulted, and the bank foreclosed in a private sale. There was a deficiency between the amount realized at the sale and the amount owing on the loan, and the bank obtained a summary judgment for the difference against Lee, who appeals.[1]

The dispositive issue before us is whether Lee explicitly waived what might be called the "*Gradsky* defense" to the deficiency action against him. The *Gradsky* defense is based on *Union Bank* v. *Gradsky* (1968) 265 Cal.App.2d 40 [71 Cal.Rptr. 64], which held that a lender is estopped to recover a deficiency judgment against a guarantor when it elects a particular remedy (nonjudicial foreclosure) which cuts off the guarantor's subrogation rights against the debtor. Thus, even though California's antideficiency statute (Code Civ. Proc., § 580d) does not protect guarantors directly,[2] as a practical matter the "*Gradsky* defense" precludes deficiency judgments against them unless the lender elects the relatively cumbersome remedy of judicial foreclosure.[3]

If there is any language in the continuing guaranty signed by Lee which expressly waived the *Gradsky* defense, it is in paragraphs 4 and 5 of

[1]Because of mathematical errors in the declaration supporting its summary judgment motion, the bank waived all sums (other than attorney fees) over $604,233.38. In addition, it waived late charges of $41,077.61.

[2]See *Consolidated Capital Income Trust* v. *Khaloghli* (1986) 183 Cal.App.3d 107, 112 [227 Cal.Rptr. 879] ("Guarantors are not specifically protected by the terms of Code of Civil Procedure sections 580b and 580d . . . ."); *Mariners Sav. & Loan Assn.* v. *Neil* (1971) 22 Cal.App.3d 232, 236 [99 Cal.Rptr. 238, 49 A.L.R.3d 549] ("The holding in *Gradsky* clearly pointed out that Code of Civil Procedure section 580d was not directly applicable to the situation of the guarantor.").

Any references in this opinion to sections 580, 580b or 580d are to the Code of Civil Procedure.

[3]*Gradsky* is based on the interplay of two ideas: (1) a guarantor can pay a debtor's debt and thereby obtain the same rights against the debtor that the original lender had; and (2) a lender (and therefore a guarantor standing in a lender's shoes) cannot obtain a deficiency judgment against a debtor if the lender elects a nonjudicial foreclosure. (See generally 265 Cal.App.2d at pp. 43-47.) Taken together, the two ideas mean that if a lender elects nonjudicial

that document. Stripped to its readable essentials, the relevant language in paragraph 4 is:

"Guarantor authorizes bank at its sole discretion . . . to: . . . (h) exercise any right or remedy it may have with respect to the Credit or any collateral securing the Credit . . . including . . . exercise of power of sale . . . and Guarantor shall be liable to Bank for any deficiency resulting from the exercise by it of any such remedy, even though any rights which Guarantor may have against others might be . . . destroyed."[4]

The core sentence from paragraph 5 reads: "Guarantor waives any defense arising by reason of any disability or other defense of Debtor, its successor or endorser or co-maker or other guarantor or by reason of the cessation from any cause whatsoever of the liability of Debtor or endorser or co-maker, or other guarantor."[5]

---

foreclosure, the lender effectively destroys the guarantor's subrogation rights against the debtor. No security remains and the lender (i.e., the guarantor standing in the lender's shoes) has no further rights against the debtor.

From this, the court in *Gradsky* reasoned that because only the lender has the option of preserving its rights *and* preserving the guarantor's subrogation rights (by electing judicial foreclosure), the lender must be estopped to pursue the guarantor if the lender elects a remedy which destroys the guarantor's subrogation rights. (See 265 Cal.App.2d at pp. 46-47.) The underlying rationale seems to be that the courts should remedy the basic inequity which occurs when the lender nonjudicially forecloses. (See Com., *Guarantors and the California Antideficiency Legislation: Is There Room Under the Umbrella of Protection?* (1988) 20 Pacific L. J. 127, 139.)

[4]Here is the complete text:

"4. Guarantor authorizes Bank at its sole discretion, with or without notice and without affecting its liability hereunder from time to time to: (a) change the time of payment of any Credit by renewal, extension, acceleration or otherwise, (b) alter or change any other provision of any Credit including the rate of interest thereon, (c) release, substitute or add one or more endosers [*sic*], co-signers or guarantors for any Credit, (d) obtain collateral for the payment of Credit and/or any guaranty thereof, (e) release existing or after acquired collateral on such terms as Bank in its sole discretion shall determine, (f) apply any sums received from Debtor, any other guarantor, endorser or co-signer or from collateral or its proceeds to any indebtedness whatsoever in any order and regardless of whether such indebtedness is guaranteed hereby, is secured by collateral or is due and payable, (g) apply any sums received from Guarantor or from the sale of collateral granted by Guarantor to any of the Credits in any order regardless of whether the Credit is secured by collateral or is due and payable and (h) exercise any right or remedy it may have with respect to the Credit or any collateral securing the Credit or Guaranty including, but not limited to judicial foreclosure, exercise of power of sale or taking of deed or assignment in lieu of foreclosure as to any collateral, and Guarantor shall be liable to Bank for any deficiency resulting from the exercise by it of any such remedy, even though any rights which Guarantor may have against others might be diminished or destroyed."

[5]Here is the complete text:

"5. Guarantor waives all right to require Bank to: (a) proceed against Debtor or any other person, (b) proceed against collateral granted by Debtor or others before collateral granted by Guarantor, (c) pursue any other remedy in Bank's power whatsoever or (d) disclose any

Our task is to determine whether either of these provisions constitutes an "express" or "explicit" waiver of Lee's estoppel defense based upon the bank's decision to pursue nonjudicial, rather than judicial, foreclosure. (See *Union Bank* v. *Gradsky, supra,* 265 Cal.App.2d at p. 48.) This is not an easy question.

II.

The case law contemplating the explicitness of language which arguably waives the *Gradsky* defense is rather thin. While a number of cases have dealt in passing with waiver language,[6] our research has uncovered only three cases which have actually held whether particular language was sufficiently explicit.

*Gradsky* is the first of these three cases. There, the court held these words did not constitute an explicit waiver: "I waive . . . any right to require the holder of this within instrument to proceed against the maker or against any other person or to apply any security it may hold or to pursue any other remedy." (265 Cal.App.2d at pp. 41-42.) The court's explanation was based on two ideas: (1) any waiver must "specifically waive the guarantor's defense based upon an election of remedies which destroys both the guarantor's subrogation rights and his right to proceed against the principal obligor for reimbursement," and (2) the court would "not strain" to imply a waiver where none was "explicit." (265 Cal.App.2d at p. 48.)

---

information with respect to the Credit, the financial condition or character of the Debtor, any collateral, other guaranties or any action or non-action on the part of Bank, Debtor or any person connected with the Credit or collateral thereto. Guarantor waives any defense arising by reason of any disability or other defense of Debtor, its successor or endorser or co-maker or other guarantor or by reason of the cessation from any cause whatsoever of the liability of Debtor or endorser or co-maker, or other guarantor. Until all Credit has been paid in full, even though it may be in excess of the liability incurred hereby, Guarantor shall not have any right of subrogation and Guarantor waives any benefit of and any right to participate in the collateral, Guarantor waives all presentments, demands for performance, notices of nonperformance, protests, notices of protest, notices of dishonor and notice of acceptance of this guaranty."

[6]See *Torrey Pines Bank* v. *Hoffman* (1991) 231 Cal.App.3d 308, 324-325 [282 Cal.Rptr. 354] (passing statement that four corners of forbearance agreement did not support any finding of waiver); *Consolidated Capital Income Trust* v. *Khaloghli, supra,* 183 Cal.App.3d 107, 116 (dicta that certain language "arguably" constituted an explicit waiver, but noting lender had not considered the waiver argument "worth the effort to set it forth"); see also *Krueger* v. *Bank of America* (1983) 145 Cal.App.3d 204, 213 [193 Cal.Rptr. 322] (reference to waiver of guarantor's right to insist that lender exhaust security first, but no discussion of waiver language); *Glendale Fed. Sav. & Loan Assn.* v. *Marina View Heights Dev. Co.* (1977) 66 Cal.App.3d 101, 155 [135 Cal.Rptr. 802] (conclusory comment that completion guarantee agreement "contained an express contractual waiver of the *Gradsky* defense"); *Union Bank* v. *Brummell* (1969) 269 Cal.App.2d 836, 839 [75 Cal.Rptr. 234] (conclusory statement that after examination of guaranty instrument, it contained no explicit waiver of "rights delineated in *Gradsky*").

Next, in *Mariners Sav. & Loan Assn.* v. *Neil, supra,* 22 Cal.App.3d 232, the court held that language which both stated (1) the guarantors waived "any defense based on Section[] 580 . . ." and (2) further waived "any right to require Association to (a) proceed against Borrowers; (b) proceed against or exhaust any security held from Borrowers; or (c) pursue any other remedy in Association's power whatsoever," was explicit. Unfortunately, that was all the court said. (See 22 Cal.App.3d at p. 236.)

Finally, in *Indusco Management Corp.* v. *Robertson* (1974) 40 Cal.App.3d 456 [114 Cal.Rptr. 47], the guarantor waived "all suretyship defenses and defenses in the nature thereof." (See 40 Cal.App.3d at p. 459.) The court determined that this language could not "fairly be construed to be a specific waiver of the guarantor's defense." (See 40 Cal.App.3d at p. 462.) Alas, again it did not elaborate. The most the court did was to footnote its conclusion with a quotation from a treatise[7] which stated the necessity for a "creditor's standard form waiver [to] contain a specific waiver based on the creditor's creation of a [Code of Civil Procedure section] 580d deficiency bar in favor of the debtor." (See 40 Cal.App.3d at p. 462, fn. 4.)

We can only glean a little from an analysis of the actual language at issue in *Gradsky*, *Mariners*, and *Indusco*. The language in *Gradsky* failed to specifically mention any rights under section 580d; the language in *Mariners* did.[8] The language in *Gradsky* failed to specifically inform the would-be guarantor he had subrogation rights that might be destroyed if the lender pursued nonjudicial foreclosure; but neither did the language in *Mariners*, though at least that language strongly implied the guarantor might actually have a defense based on section 580d. The language in *Indusco* seems very general indeed, so we can easily understand why it failed to pass muster.

In analyzing these cases, however, it is perhaps too easy to stray from the question which must necessarily be the core of whether the *Gradsky* defense has been waived: what is it, *precisely*, that the guarantor is being asked to waive? The answer is supplied by *Gradsky* itself: it is the *defense* based on estoppel which arises out of the operation of section 580d in the context of a nonjudicial foreclosure. If we keep this basic fact in mind, it becomes clear that it is not enough merely to imply (however strongly or unavoidably) to the guarantor that he or she has a "right" to compel the lender to select a particular remedy (judicial foreclosure) in the event the principal obligor

[7]Hetland, California Real Estate Secured Transactions (Cont.Ed.Bar 1970) section 6.54, page 321.

[8]In its brief, Cathay Bank charitably speculates that the official reporter or the printer in *Mariners* omitted the "d" in the reference to section "580," because reference to section 580 in this context would be meaningless. We agree. Section 580, which addresses the relief available on default judgments, has nothing to do with the *Gradsky* defense.

fails to pay the loan. This does not spell out the true legal consequences of what would otherwise happen if the lender selects another remedy (nonjudicial foreclosure). The guarantor is not told that if the lender selects nonjudicial foreclosure, he or she will have a *defense* to a deficiency judgment, and it is *that defense* which the guarantor is now being asked to give up in advance.

Judged on this basis, the language in paragraph 4 of this case falls short of constituting an "explicit" or "specific" waiver of the *Gradsky* defense. While it is true that paragraph 4 tells the guarantor he or she may lose subrogation rights, it does nothing to tell the guarantor that the very fact of the loss of those subrogation rights *itself* has legal significance—namely that it confers an immunity from a deficiency judgment.

The closest paragraph 4 comes to such a declaration is the language which states the guarantor "shall be liable to Bank for any deficiency resulting from the exercise by it of any such remedy, even though any rights which Guarantor may have against others might be . . . destroyed." But again, the problem with these words is that they are insufficiently specific about the *precise* rights that are being waived. In effect, all they say is: "You will be liable for a deficiency judgment even if our exercise of one of our remedies destroys your subrogation rights." To find a waiver of the *Gradsky* defense here one must go beyond the actual words and imply into them two more ideas, namely: (1) that the destruction of subrogation rights creates a defense to a deficiency judgment, and (2) the guarantor is now waiving that *specific* defense.

The first principles of waiver buttress our conclusion. Waiver is the intentional relinquishment of a *known* right. (*BP Alaska Exploration, Inc.* v. *Superior Court* (1988) 199 Cal.App.3d 1240, 1252 [245 Cal.Rptr. 682] [erroneous legal concession not waiver because not intentional and knowing].) "The burden is on the party claiming the waiver to prove it by clear and convincing evidence that '"does not leave the matter doubtful or uncertain . . . ."' " (*Pacific Valley Bank* v. *Schwenke* (1987) 189 Cal.App.3d 134, 145 [234 Cal.Rptr. 298], quoting *In re Marriage of Vomacka* (1984) 36 Cal.3d 459, 469 [204 Cal.Rptr. 568, 683 P.2d 248].) Waiver requires " 'sufficient awareness of the relevant circumstances and likely consequences.' " (*In re Marriage of Perkal* (1988) 203 Cal.App.3d 1198, 1203 [250 Cal.Rptr. 296], quoting *In re Marriage of Moore* (1980) 113 Cal.App.3d 22, 27 [169 Cal.Rptr. 619].)

These principles emphasize actual knowledge and awareness of what is being waived, and require resolution of doubts against waiver. Here,

the language in paragraph 4 does not provide the reader with any actual awareness of the *Gradsky* defense (i.e., the legal consequence of the destruction of subrogation rights by nonjudicial foreclosure), and even if the matter is arguable, the doubt should be resolved against waiver.

This last point raises the more general issue of how courts should approach waivers of the *Gradsky* defense in guaranty agreements. The average lawyer would naturally suppose that any ambiguities would be construed against the party who selected the language, who normally is the lender.

Cathay Bank, however, cites us to two cases (*Brunswick Corp.* v. *Hays* (1971) 16 Cal.App.3d 134 [93 Cal.Rptr. 635], and *Berg Metals Corp.* v. *Wilson* (1959) 170 Cal.App.2d 559 [339 P.2d 869]) which indicate otherwise. Each of these cases contains a quotation to the effect that ambiguities in guaranty contracts are interpreted against guarantors.

The proposition is unsound, at least as applied to waivers of rights inhering in statutory law. *Brunswick Corp.* v. *Hays, supra,* 16 Cal.App.3d at pages 138-139, quoted *Berg Metals Corp.* v. *Wilson, supra,* 170 Cal.App.2d at page 571, for the ambiguities-against-the-guarantor rule, which in turn quoted *Lean* v. *Geagan* (1912) 20 Cal.App. 260 [128 P. 792]. When we turn to *Lean,* however, we find it provides no authority for its statement,[9] which is not surprising given that, taken literally, the statement contradicts one of the most fundamental tenets of contract law (see Civ. Code, § 1654). What, one might ask, is so special about guaranty contracts that they are exempt from the rule of contra proferentem?

The answer is: nothing. *Lean* involved a situation where the defendant guaranteed repayment of indebtedness for merchandise sold to a third party "provided the amount due or to become due shall at no time exceed the sum of one thousand dollars." (20 Cal.App. at p. 261.) The lender extended credit in excess of $1,000, the third party paid less than $100, the lender sued the guarantor and prevailed, and the guarantor was granted a new trial on the theory that the guaranty was *conditioned* on the lender's not extending credit in excess of $1,000. (See 20 Cal.App. at pp. 261-262.) The appellate court rejected the theory on the (hardly surprising) ground that nothing indicated the guarantor "feared that a credit in excess of the amount stated in the instrument would be injurious to her, or that she desired to control the amount of credit" which the lender extended. (20 Cal.App. at p. 263.) It was in the context of showing that the language relied on by the guarantor was

[9]"It is well settled that any ambiguity in a contract of guaranty, concerning the liability of the guarantor, will be resolved in favor of protecting the creditor to the extent of the sum named therein; in other words, that such a provision will be construed as a limitation upon the amount of the guarantor's liability rather than as a condition upon which any liability whatever attaches." (20 Cal.App. at p. 262.)

only a *limitation* on the amount she was guaranteeing, not a *condition* precedent to her liability, that the court made its ambiguity statement. (See fn. 9 *ante.)*

It is true that guaranty contracts are not contracts of adhesion. (*Security Pacific National Bank* v. *Adamo* (1983) 142 Cal.App.3d 492, 497-498 [191 Cal.Rptr. 134].) But that cannot reverse the usual rule that ambiguities are construed against the drafter. *Adamo* used the phrase "contract of adhesion" to refer to a certain kind of "unenforceable" contract, i.e., one which defeats the reasonable expectation of the adhering party, not to an ordinary garden-variety agreement which, while nonetheless enforceable, still must be construed against the drafter. (See 142 Cal.App.3d at p. 497.)

Finally, our conclusion is buttressed by the absence of any mention of section 580d. It would seem that, even if waiver language did not actually tell the guarantor of the substance of the *Gradsky* defense, it might at least tell the guarantor that he or she is waiving any defense or benefit based on the underlying statutory basis of the *Gradsky* opinion, that is, section 580d. Indeed, the section was specifically mentioned in both the language in *Mariners* (held explicit) and in the form waiver given in a recent treatise, 1 California Real Property Financing (Cont.Ed.Bar 1988). (See § 7.20, p. 320.)

We turn now to the language in paragraph 5. On first reading, the core sentence of this paragraph appears absolutely hopeless. The sentence is a disjunctive nightmare, larded with "ors." If we puzzle over the sentence long enough, though, we eventually discover that it is structured around two alternatives. The guarantor waives "any defense" either (1) *by reason of any disability or other defense of Debtor, its successor or endorser or co-maker or other guarantor,* or (2) *by reason of the cessation from any cause whatsoever of the liability of Debtor or endorser or co-maker, or other guarantor.*

The best one can make of the first alternative is that the guarantor is waiving any "defense based on any defense" of the debtor. This statement, however, is even more general than the "all suretyship defenses" language which was held to be insufficiently explicit in *Indusco*. It is simply too broad to pass muster as a "specific waiver" of estoppel rights. (See *Indusco, supra,* 40 Cal.App.3d at p. 462, fn. 4.)

The second alternative, centered on the words "cessation from any cause whatsoever of the liability of the Debtor," is even harder to understand. A lawyer, familiar with note and deed of trust practice, might deduce that the words allude to the one-action rule. But even then, so what? The relation between, on the one hand, a defense "by reason" of the debtor's ceasing to

be liable to the lender, and, on the other, an estoppel defense created by court decision based on the destruction of the guarantor's rights by the lender's choice of remedies is hardly self-evident. We dare say the average person would never figure it out. It took Justice Hufstedler several pages to explain the connection in *Gradsky*.

III.

We must therefore conclude that the language in paragraphs 4 and 5 of the continuing guaranty agreement cannot, as a matter of law, establish an express waiver of the estoppel defense articulated by *Gradsky*. Accordingly, the summary judgment in favor of Cathay Bank cannot be sustained. All other issues follow in the wake of this determination, except one—should the summary judgment merely be reversed, or should we also direct that judgment be entered in Lee's favor?

Lee also brought a motion for summary judgment. The bank defended against Lee's motion on legal grounds, arguing Lee, as a guarantor, was not covered by California's antideficiency legislation, and that Lee was liable for the contents of the guaranty, even if he did not read it before signing. The bank also asserted that the waiver language was sufficient.

What the bank did not argue is that Lee had, *by his conduct*, waived the *Gradsky* defense. (See generally *Consolidated Capital Income Trust* v. *Khaloghli*, *supra*, 183 Cal.App.3d 107.) We confirmed at oral argument that the bank did not have any facts (beyond, of course, the guaranty itself) on which to base such a waiver. Accordingly, mere reversal would only add to court delay and the parties' legal costs by forcing Lee to bring a second motion for summary judgment, the success of which, given our opinion today, would be a foregone conclusion. We therefore reverse the summary judgment in favor of Cathay Bank and direct that judgment be entered in favor of Lee.

Moore, J., and Wallin, J., concurred.

Respondent's petition for review by the Supreme Court was denied July 15, 1993. Panelli, J., and Baxter, J., were of the opinion that the petition should be granted.