**In re Julio B. ACOSTA, Debtor.**

**No. C 94–795–FMS.**

United States District Court, N.D. California.

Nov. 8, 1994.

---

Michael D. Cooper, Law Offices of Wendal, Rosen, Black & Dean, Oakland, CA, for debtor.

Stephen C. Becker, Trustee, San Francisco, CA.

Aaron S. Milberg and Stephen D. Finestone, Haas & Najarian, San Francisco, CA, for creditor Enrique Gerbi.

### ORDER AFFIRMING THE BANKRUPTCY COURT'S JUDGMENT

FERN M. SMITH, District Judge.

### ISSUES

This appeal requires the Court to decide whether the United States Bankruptcy Court committed clear error by (1) holding that appellant Julio Acosta's ("Acosta") pension plans were not excluded from his bankruptcy

estate pursuant to the anti-alienation provisions of Title I and the Internal Revenue Code ("I.R.C."); (2) finding that ERISA preempted California law and that the pension plans were not exempt under California Civil Procedure Code section 704.115; and (3) approving the settlement agreement between Acosta and appellees after admitting parol evidence to interpret the parties' intent. As a related matter, this appeal also requires the Court to decide whether the bankruptcy court abused its discretion by awarding prejudgment interest to Acosta's creditor and the trustee in bankruptcy. For the reasons stated below, the Court AFFIRMS the judgment.

## INTRODUCTION

Acosta appeals a bankruptcy court judgment approving a settlement agreement (the "Compromise") entered into among himself, on the one hand, and creditor Enrique Gerbi ("Gerbi") and the trustee in bankruptcy, Stephen C. Becker ("Becker"), on the other (collectively, "appellees"). Acosta also appeals the bankruptcy court's judgment awarding prejudgment interest to the appellees.

## BACKGROUND

Acosta filed for bankruptcy on October 26, 1988. Among Acosta's assets were his interest in two pension plans (the "Plans"), of a medical corporation known as Walnut Lake Medical ("Walnut Lake"). Acosta has at all times controlled and been the sole shareholder of Walnut Lake, and the only payments to the Plans were made by Walnut Lake on behalf of Acosta. Acosta claimed that his interest in the Plans was either exempt under California law or excluded under ERISA or the I.R.C. On several occasions, the bankruptcy court has denied such claims.

On May 26, 1992, the parties reached an agreement on various disputes concerning the Plans. Under the terms of the Compromise, Acosta was to pay $200,000 in cash to the bankruptcy estate and withdraw, with prejudice, his motion for reconsideration of the bankruptcy court's decision disallowing his exemption claims. Acosta further agreed

to waive his right to appeal the exemption disallowance decision (the "Order").

In exchange for the above, Becker agreed to (a) waive whatever claim he had to seek revocation of Acosta's bankruptcy discharge for having removed over $267,000 from the Plans, (b) release his interest in Acosta's residence and (c) release his claim against Acosta's interest in the Plans. Gerbi also agreed to withdraw, with prejudice, his objection to the exemption claims and to release and waive any portion of his claim not paid through the estate.

After the parties signed the Compromise but before the bankruptcy court could approve it, the United States Supreme Court issued its decision in *Patterson v. Shumate,* 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992). In *Patterson,* the Court held that a debtor with an interest in ERISA-qualified plans may exclude his interest in the plans from the property of a bankruptcy estate under section 541(c)(2) of the Bankruptcy Code. During the approval hearing, Acosta asserted that the Compromise was illegal and could not be approved because approval would force Acosta to alienate an interest that he is protected from alienating under the decision in *Patterson.*

Over Acosta's objection, the bankruptcy court allowed appellees to introduce extrinsic evidence to aid the court in determining whether the parties had intended Acosta's interest in the Plans to be the exclusive source of cash to fund the Compromise. This finding was crucial because if the Plans were found to be the exclusive source of funding the $200,000 payment, Acosta asserts that the Compromise would directly contradict ERISA's anti-alienation provisions and would therefore be illegal and void.

At the hearing to approve of the Compromise, the bankruptcy court concluded that (1) the Plans were not subject to ERISA, and were thus not excludable from the estate; (2) the Plans were not excludable under the I.R.C. because the I.R.C. did not provide for a private cause of action separate from ERISA; (3) ERISA preempted California Civil Procedure Code section 704.115, which allows debtors to exempt their interest in pension funds regardless of whether the

funds are subject to ERISA or the I.R.C.; and (4) the Plans were not the exclusive source of funding for the Compromise. The effect of the bankruptcy court's conclusions was to compel Acosta to perform his obligations under the Compromise.

In a related action, the bankruptcy court awarded appellees pre-judgment interest from the date of the Compromise to the date of the bankruptcy court's order directing Acosta to comply with his obligations under the Compromise. That action has since been consolidated with the first action.

## DISCUSSION

### I. Enforcing The Terms Of The Compromise

#### A. Standard Of Review

On appeal, the factual findings of a bankruptcy court are reviewed under a clearly erroneous standard, and its legal conclusions are reviewed *de novo*. *Pizza of Hawaii v. Shakey's (In re Pizza of Hawaii)*, 761 F.2d 1374, 1377 (9th Cir.1985). The approval of a settlement agreement is reviewed on the basis of whether the lower court abused its discretion. *Callie v. Near*, 829 F.2d 888, 890 (9th Cir.1987).

#### B. Exclusion From The Bankruptcy Estate

The bankruptcy court held that the plans were not subject to ERISA and that the I.R.C. provided no private cause of action for a pension plan that was not ERISA-qualified. Acosta asserts that his interest in the Plans are excludable from his bankruptcy estate because the Plans were subject to the anti-alienation provisions of the I.R.C., 26 U.S.C. § 401(a)(13), and/or Title I of ERISA, 29 U.S.C. §§ 1001–1145.

#### 1. Acosta May Not Exclude The Plans Under ERISA

The bankruptcy court held that the Plans were not subject to ERISA because the Plans had no participants, noting that the sole shareholder of a corporation does not qualify as an employee because a sole shareholder is deemed to be an employer. The bankruptcy court further noted that an em-

ployer is prohibited from receiving any benefit from an ERISA-qualified plan, citing 29 C.F.R. § 2510.3–3(b) and (c)(1), 29 U.S.C. § 1103(c)(1), and *Kwatcher v. Mass. Serv. Emp. Pension Fund*, 879 F.2d 957, 959–64 (1st Cir.1989).

The bankruptcy court also noted that while Walnut Lake did employ an individual at one time, the Plans did not retain any benefits due to the former employee; therefore, the Plans were not subject to ERISA.

This Court knows of no case, and the parties have not cited any, with a fact pattern similar to the one in question. *In re Witwer*, 148 B.R. 930 (Bankr.C.D.Cal.1992), *aff'd* 163 B.R. 614 (9th Cir. BAP 1994), however, held that "a Plan without eligible participants cannot be an ERISA qualified 'employee pension benefit plan' …" *Id.* at 936. The *Witwer* court also stated that "despite the fact that the Debtor's Plan contemplates coverage extending to future employees, [a court] cannot view the terms of the Plan within a vacuum." *Id.* (citations omitted). Since the parties agree that Acosta is the only current participant in the Plans, and since it would create potentially abusive situations if a plan were to be considered ERISA qualified merely by hiring one employee at any time, and for any length, during the life of the plan, the Court finds that the bankruptcy court's finding that the Plans are not subject to ERISA is not clearly erroneous.

#### 2. The Plans Are Not Excluded Under The I.R.C.

Acosta asserts that the anti-alienation provisions of the I.R.C. are enforceable under section 541(c)(2) of the Bankruptcy Code regardless of whether the property is also subject to section 206(d)(1) of ERISA, 29 U.S.C. § 1056(d)(1). Appellees agree with the holding of the bankruptcy court that the I.R.C. does not create any substantive rights that a participant of an employee benefit plan can enforce.

The seminal case which addresses this issue is *In re Witwer*, 148 B.R. 930 (Bankr. C.D.Cal.1992), which held that:

> [t]he provisions of I.R.C. § 401(a) relate solely to the criteria for tax qualification

under the Internal Revenue Code. Although a transfer in violation of the required anti-alienation provision could result in adverse tax consequences I.R.C. § 401(a) does not appear to create any substantive rights that a beneficiary or participant of a qualified retirement trust can enforce. Furthermore, absent the most compelling evidence of affirmative Congressional intent a federal court should not infer a private cause of action under I.R.C. § 401(a).

*Id.* at 937 (citations omitted). *Witwer* is persuasive; therefore, the bankruptcy court's finding that the I.R.C. does not provide for a private cause of action is not clearly erroneous.

### C. The Plans Are Exempt Under California Law

■ Acosta asserts that if the Plans are not excludable under ERISA or the I.R.C., then the Plans are exempt under section 704.115 of the California Civil Procedure Code. The bankruptcy court held that ERISA preempted California law regardless of whether the Plans were subject to ERISA or not; therefore, the exemption provisions under California law were not available to Acosta.

29 U.S.C. § 1144(a) provides that ERISA shall supersede any and all State laws as they relate to any employee benefit plan covered by ERISA. 29 U.S.C. § 1144(a). The Court knows of no binding authority, however, which suggests that ERISA preempts state laws that relate to employee benefit plans not covered by ERISA. Appellees refer to *Reed v. Drummond (In re Reed)*, 951 F.2d 1046 (9th Cir.1991), *vacated,* — U.S. ——, 113 S.Ct. 314, 121 L.Ed.2d 235 (1992), wherein, the Ninth Circuit found that ERISA preempted two Arizona exemption statutes, even though the plan in question was presumably not subject to ERISA.[1] *Id.* at 1048, 1050. The court in *Reed* ultimately found preemption based on the fact that one of the statutes directly mentioned ERISA in its language while the other statute indirectly referenced ERISA via its corresponding I.R.C. section numbers. *Id.* at 1048.

Because the Reed decision was vacated by the Supreme Court pending the outcome of *Patterson,* the Court again looks to *In re Witwer, supra,* which held that the plan qualified for exemption under § 704.115 even though the debtor's plan was not ERISA qualified. *Id.* at 939. That court held that plan exemption under California law was not conditioned upon a finding that the plan was ERISA qualified. *Id.* This Court agrees and finds that the bankruptcy court's finding that ERISA preempted section 704.115 was erroneous. Acosta was therefore entitled to exempt his interest in the Plans from his bankruptcy estate. As noted below, however, this does not require reversal of the ultimate decision in this matter.

### D. Acosta Waived His Exemption Rights Under California Law

Appellees assert that even if one of the exclusion or exemption rules are applicable, Acosta waived his exemption rights when he entered into the Compromise. Acosta asserts that he did not know of his rights before he allegedly waived them; therefore, he could not waive them under applicable California law. Acosta also asserts that regardless of whether he knew of his rights, the contract is illegal and void and that the illegality of contracts cannot be waived. *See In re Loretto Winery, Ltd.,* 898 F.2d 715, 723 (9th Cir.1990); *Cook v. King Manor and Convalescent Hospital,* 40 Cal.App.3d 782, 793, 115 Cal.Rptr. 471 (1974).

■ Under California law, waiver is the "intentional relinquishment of a known right." *Cathay Bank v. Lee,* 14 Cal.App.4th 1533, 1539, 18 Cal.Rptr.2d 420 (1993) (citations omitted). In the present situation, appellees retain the burden of proving waiver by clear and convincing evidence. *Id.* Waiver also requires a sufficient awareness of the relevant circumstances and the likely consequences. *Id.*[2]

---

1. The plan was presumed not to be subject to ERISA because, like in Acosta's case, the only beneficiary of the plan was the sole shareholder of a medical corporation.

2. The only issue in question is whether Acosta waived his right to exemption under California law since the exclusionary rules under ERISA are inapplicable based on the above findings.

■ Reviewing the Compromise, the Court agrees with appellees because the stipulations indicate that Acosta was aware of the possibility of plan asset exemption. Under the Compromise, Acosta withdrew, with prejudice, his motion for reconsideration on the bankruptcy court's disallowance of his exemption claims and waived his right to appeal the bankruptcy court's disallowance. Such actions strongly infer that Acosta intentionally relinquished his opportunity to reverse the disallowance of his exemption claims in exchange for certain relinquishments by Becker and Gerbi.[3] The Court thus finds that Acosta knew of his potential right to exempt his plan assets and knowingly waived such rights to protect other actions against him by appellees.

■ Acosta further asserts that, under *Patterson*, the Compromise violates ERISA's anti-alienation provisions. In finding that a debtor's interest in an ERISA-qualified plan may be excluded from the property of the debtor's bankruptcy estate, the *Patterson* court stated that declining to recognize exceptions to ERISA's anti-alienation provision within the bankruptcy context would minimize the possibility that creditors would engage in strategic manipulations of the bankruptcy laws in order to gain access to otherwise inaccessible funds. 504 U.S. at 764, 112 S.Ct. at 2250.

The Court distinguishes this present situation from the finding in *Patterson*, however, because the plans in question are not ERISA qualified, and the California exemption law makes no direct or indirect reference to ERISA. Acosta's reliance upon *Patterson* is further distinguishable because the referenced dicta pertained to the use of a constructive trust or garnishment by a creditor. Such unilateral actions by a creditor are completely different from the present situation

because Acosta was not an idle party subject to appellees' manipulations. The record indicates that Acosta knowingly traded his opportunity to appeal the disallowance of his exemption claims in return for a reduced payment. The Court thus finds that the stipulations in the Compromise and the entire record in this matter are sufficient to show by clear and convincing evidence that Acosta voluntarily and knowingly waived his exemption rights under California law.

**E. Whether The Plans Were Intended To Be The Exclusive Source Of Payment And Whether The Admission Of Parol Evidence Was Clear Error Are Irrelevant**

Acosta asserts that the bankruptcy court committed clear error when it found that the Plans were not the exclusive source of payment. Acosta reasons that if the Plans were the exclusive source of payment, the Compromise would be illegal and void because it would violate ERISA's anti-alienation provisions which, unlike California's exemption laws, are not waivable.

The Court does not find that the bankruptcy court committed clear error on this issue. Additionally, a determination of whether the Plans were intended to be the exclusive source of payment is irrelevant. Even if the Court were to find that the Plans were intended to be the exclusive source of payment, the Compromise would not be illegal and void under ERISA because the Plans were not subject to ERISA. Furthermore, the Compromise would not be illegal and void under California law; California exemption rights are waivable, and Acosta waived those rights when he entered into the Compromise. As such, a determination of whether the bankruptcy court committed clear error by admitting extrinsic evidence in finding that the

Because, however, the exclusion and exemption rules practically operate in a similar manner (i.e. to protect Acosta's interest in the Plans from the bankruptcy estate), and because a primary reason for Acosta's appeal is that *Patterson* has somehow affected his position, the Court will impute Acosta's knowledge of the exclusion rules to knowledge of the exemption rules.

**3.** As noted above, in return for the $200,000 payment, Becker (a) waived whatever claim he

had to seek revocation of Acosta's bankruptcy discharge for having removed over $267,000 from the Plans, (b) released his interest in Acosta's residence and (c) released his claim against Acosta's interest in the Plans. Additionally, Gerbi agreed to withdraw, with prejudice, his objection to the exemption claims, and Gerbi released and waived any portion of his claim not paid through the estate.

Plans were not the sole source of payment is similarly irrelevant.

### F. There Was No Mutual Mistake Of Fact Or Law

■ Under California Civil Code section 1689(b)(1), mutual mistakes of fact or law are grounds for rescission. Cal.Civ.Code § 1689(b)(1). Neither occurred in this matter.

Acosta asserts that the parties mistakenly believed that the Plans were subject to ERISA (mistake of fact) and were, therefore, neither exempt nor excludable (mistake of law). The mistake of fact argument is faulty because Acosta links exemptability and excludability with a finding of whether the Plans are subject to ERISA. As noted above, the two outcomes may be related but need not be. In fact, exemptability in the present situation is completely unrelated to whether the Plans are subject to ERISA.

Even if the parties entered into the Compromise under the belief that the Plans were ERISA qualified, Acosta was not mistaken about the fact that the Plans were potentially exempt under California law. The record indicates that after the bankruptcy court disallowed Acosta's exemption claims, Acosta filed a motion for reconsideration. Furthermore, the Compromise indicates that Acosta would likely file a notice of appeal if the motion for reconsideration was denied. Such facts demonstrate that regardless of whether the Plans were ERISA qualified or not, Acosta maintained his belief that the Plans were potentially exempt under California law.

Acosta's mistake of law argument also fails. The parties entered into the Compromise precisely because they wanted to minimize their risks before the *Patterson* decision. The stipulations indicate that Acosta knew of the potential outcome of *Patterson* when he entered into the Compromise and of the dispute among the circuits as to whether a pension plan qualified for exclusion under ERISA. Accordingly, both parties knew that the Supreme Court could find in either party's favor and that exemption was a possibility. In *Guthrie v. Times–Mirror Co.*, 51 Cal.App.3d 879, 124 Cal.Rptr. 577 (1975), the court held that "[w]here parties are aware at the time the contract is entered into that a doubt exists in regard to a certain matter and contract on that assumption, the risk of the existence of the doubtful matter is assumed as an element of the bargain." *Id.* at 885, 124 Cal.Rptr. 577. The Court thus finds that there was no mistake of law.

### G. The Compromise Is Not Contrary To The Interests Of Justice

■ Acosta finally asserts that the Compromise should be rescinded in the interests of justice. Appellees respond that the bankruptcy estate would be severely prejudiced if the agreement were rescinded and that the interests of justice support upholding the agreement.

*In re Lenox*, 902 F.2d 737 (9th Cir.1990), held that a bankruptcy court could set aside a stipulation if (1) the interests of justice so require and (2) if the parties can be restored to the positions they occupied before they entered into the stipulation. *Id.* at 740. Acosta asserts that both elements are satisfied here.

The Court finds that the parties cannot be restored to their original positions because Acosta could claim exemption of the Plans' assets under California law and prevent the estate from accessing any of the Plans' funds. The Court also disagrees with Acosta's assertion that rescission is proper because of his age and medical condition. While the Court understands Acosta's dilemma, it is in the interests of justice to uphold legally binding contracts. Accordingly, the Court finds that the bankruptcy court did not commit clear error by approving the settlement agreement.

## II. Award Of Prejudgment Interest

### A. Standard Of Review

■ An award of pre-judgment interest is reviewed on the basis of whether the lower court abused its discretion. *United States v. California State Bd. of Equalization*, 650 F.2d 1127, 1132 (9th Cir.1981), *aff'd*, 456 U.S. 901, 102 S.Ct. 1744, 72 L.Ed.2d 157 (1982), *reh'g denied*, 456 U.S. 985, 102 S.Ct. 2261, 72 L.Ed.2d 864 (1982).

## B. The Bankruptcy Court Did Not Abuse Its Discretion By Awarding Pre-judgment Interest

In *California State Bd. of Equalization,* the court held that "[t]he award of pre-judgment interest in a case under federal law is a matter left to the sound discretion of the trial court." 650 F.2d at 1132. A court is, however, prohibited from awarding pre-judgment interest that either duplicates an item of compensation already awarded or compensates for a loss that will never be suffered or that has not been suffered prior to judgment. *Columbia Brick Works v. Royal Ins. Co.,* 768 F.2d 1066, 1068 (9th Cir. 1985). In other words, a court abuses its discretion if the award of interest amounts to a penalty rather than compensation. *Id.*

The bankruptcy court did not abuse its discretion by awarding appellees pre-judgment interest. Acosta entered into the Compromise to pay a specified amount, but managed to delay payment for approximately fifteen months by filing numerous motions for reconsideration. The award does not penalize Acosta for not paying because, theoretically, Acosta had use of the money with which to earn interest. Instead, the award compensates appellees for doing without the money for over a year.

The cases cited by Acosta are no longer good law and/or are irrelevant. *Kincade v. General Tire & Rubber Co.,* 540 F.Supp. 115 (W.D.Tex.1982) was reversed on appeal, *Kincade v. General Tire & Rubber Co.,* 716 F.2d 319 (5th Cir.1983), and dealt with *post-judgment* interest, which is a different issue. *Dillon v. Davenport,* 366 N.W.2d 918 (1985) concerned compliance with a state statute and has no applicability to the issue in question. The Court thus AFFIRMS the bankruptcy court's award of pre-judgment interest.

## CONCLUSION

For the reasons stated above, the bankruptcy court's decision is hereby AFFIRMED.